UNITED STATES, Appellant

v.

MERLE ALTON LEE, Fireman Apprentice, U. S. Navy, Appellee

1 USCMA 212, 2 CMR 118

No. 200

Decided March 13, 1952

MAJ. Charles H. LeClaire, USMC, for Appellant.
CDR. Malcom J. Bradbury, USN, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

I

The accused, a fireman apprentice aboard the U.S.S. Sarsfield, was charged with the theft of a sum of money from a shipmate in violation of Article 121, Uniform Code of Military Justice, 50 USC § 715. Upon trial by special court-martial the accused entered a plea of not guilty but was found guilty. He was sentenced to receive a bad-conduct discharge, to forfeit fifty-five dollars per month for three months, and to be confined at hard labor for three months. The convening authority approved the findings and sentence but suspended the execution of the bad-conduct discharge, and this action received the approval of the supervisory authority, Commander, Destroyer Force, United States Atlantic Fleet. The record of trial was then considered by a board of review in the Office of The Judge Advocate General, United States Navy, which set aside the proceedings, findings, and sentence, and ordered a rehearing. The necessity for this action on the part of the board was based on the theory that trial counsel in the case had previously acted as investigating officer within the meaning and in violation of Article 27 (a), Uniform Code of Military Justice, 50 USC § 591. The view of the board was that this constituted juris-

dictional error requiring reversal. The case was certified to us by the Acting Judge Advocate General, United States Navy, pursuant to the provisions of Article 67 (b) (2), Uniform Code of Military Justice, 50 USC § 654, and the following two issues were raised:

"(a) Was the trial counsel 'investigating officer' within the meaning of Article 27 (a), Uniform Code of Military Justice?

"(b) Did the special court-martial have jurisdiction to try the accused?"

## II

The record reflects that during the course of the introduction of counsel, Lieutenant (junior grade) William H. Barton, Jr., the regularly appointed trial counsel, announced to the court:

"The prosecutor named in the order convening the court has not acted as investigating officer, law officer, court member, or as a member of the defense in this case, or as a counsel for the accused at a pretrial investigation or other proceedings involving the same general matter.

.  .  .  .  .

"The general nature of the charge in this case is theft; the charge was preferred by myself; forwarded to the convening authority with recommendations as to disposition by myself. *No formal investigation was made, though the trial counsel conducted an informal investigation in order to sign the charges as the accuser.* No member of the court will be a witness for the prosecution." (Italics supplied)

It thus appears that although no pretrial investigation within the meaning of Article 32, Uniform Code of Military Justice, 50 USC § 603, was required or conducted in the instant special court-martial case, Lieutenant Barton, trial counsel, had in fact served as the accuser of Lee, and prior to signing charges had made an informal preliminary investigation for the purpose of determining whether the facts appeared to warrant the action subsequently taken by him.

Article 27 (a), Uniform Code of Military Justice, supra, deals with the

**214**

appointment and qualifications of trial counsel and defense counsel in court-martial cases, and its provisions are set out hereafter in pertinent part:

*"No person who has acted as investigating officer,* law officer, or court member in any case *shall act subsequently as trial counsel,* assistant trial counsel, or unless expressly requested by the accused, as defense counsel or assistant defense counsel in the same case. No person who has acted for the prosecution shall act subsequently in the same case for the defense, nor shall any person who has acted for the defense act subsequently in the same case for the prosecution." (Italics supplied)

The term "investigating officer" is not defined in Article 27 (a), nor in any other Article of the Code. However, the Manual for Courts-Martial, United States, 1951, paragraph 64, purports to define the phrase in the following language:

"Within the meaning of the fifth clause of 62f and Articles 25d (2), 26a, and 27a, the term 'investigating officer,' as applied to a particular offense, shall be understood to include a person who, under the provisions of 34 and Article 32, has investigated that offense or a closely related offense alleged to have been committed by the accused. The term also includes any other person who, as counsel for, or a member of, a court of inquiry, or as an investigating officer or otherwise, has conducted a personal investigation of a general matter involving the particular offense; however, it does not include a person who, in the performance of his duties as counsel, has conducted an investigation of a particular offense or a closely related offense with a view to prosecuting or defending it before a court martial."

Article 32 (a), Uniform Code of Military Justice, supra, provides that "No charge or specification shall be referred to a general court-martial for trial until a thorough and impartial investigation of all the matters set forth therein  .  .  ." shall have been

made. See also Manual for Courts-Martial, United States, 1951, paragraph 34. Despite the fact that no such requirement has been provided by either the Code or the Manual in the case of trial by special court-martial, pre-trial investigations, which serve much the same purpose as the preliminary hearing of the civilian procedure, do as a matter of practice precede many trials by this inferior tribunal. None was had in the instant case, however, and it is certain that Lieutenant Barton did not investigate charges against Lee within the meaning of Article 32.

## III

It is distinctly arguable that the functionary whose duty it is to conduct the investigation considered in the preceding paragraph, and who is always characterized as "the investigating officer," is the only official contemplated by the use of the term in the caveat contained in Article 27 (a). This is true notwithstanding the fact that the same phrase is popularly—and in some instances officially—applied in the military service to any officer designated by higher authority to conduct an investigation into matters of command interest, regardless of their connection with disciplinary affairs or military justice. It will be observed that the prohibitory language of Article 27 (a) used in this connection specifically links (1) the investigating officer, (2) the law officer, and (3) the court member; refers to no other official; and provides that no person who has acted as such "in any case" shall act subsequently in certain named capacities including the position of trial counsel "in the same case." By way of analogy the suggested implication is made equally clear in Article 25 (d) (2) which deals with a related problem in which isolation from prior contact with the details of a court-martial proceeding is perhaps of even greater importance. There it is provided that:

"No person shall be eligible to sit as a *member* of a general or a special court-martial when he is the accuser or a witness for the prosecution or has acted as *investigating officer* or as counsel *in the same case*." (Italics supplied)

However this may be, the Manual in paragraph 64, previously set out herein, takes a broader view of the content of the term "investigating officer," as used in Article 27 (a). Analysis of this paragraph suggests that the following persons shall be deemed to be included within the phrase's meaning:

(1) One who has investigated the offense in question or a related offense under the provisions of Article 32.

(2) One who has served as a member of or as counsel for a court of inquiry and as such has conducted a personal investigation of a general matter involving the offense in question.

(3) One who as "investigating officer"—acting other than under Article 32 apparently—has conducted a personal investigation of a general matter involving the offense in question.

(4) One who has "otherwise" conducted such a personal investigation.

It is the position of appellate defense counsel that Lieutenant Barton "otherwise . . . conducted a personal investigation . . . involving the particular offense." Because of this—the argument continues—he is an investigating officer within the meaning of Article 27 (a), through paragraph 64 of the Manual, and as such is disqualified to serve as trial counsel in the case at bar.

## IV

Assuming, without deciding, the correctness of this position, it would follow that error was undoubtedly committed in permitting the trial counsel to continue as such once his previous connection with the case had been disclosed. In dealing with this problem the Manual for Courts-Martial, United States, 1951, paragraph 44b, has the following to say:

"Whenever it appears to the court or to the trial counsel himself that

any member of the prosecution named in the appointing order is for any reason, including misconduct, bias, prejudice, hostility, *previous connection with a particular case,* or lack of legal qualifications (for general courts-martial), disqualified or unable properly and promptly to perform his duties, a report of the facts will be made at once to the convening authority and appropriate action taken to insure that the disqualified member shall not act for the prosecution." (Italics supplied)

Whether this error should be deemed to constitute reversible error,—that is, whether there is a fair risk that it materially prejudiced the substantial rights of the accused—is, however, another matter. See United States v. Lucas, (No. 7), 1 USCMA 19, 1 CMR 19. The Uniform Code of Military Justice, Article 59 (a), 50 USC § 646, provides for the area of military judicial administration the "harmless error statute" found in other federal and much state legislation, and its language is set out below:

"A finding or sentence of a court-martial shall not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused."

It seems to us that the mandate of this statutory directive is clear. We are not to reverse for error of ▮▮ law unless we are of opinion on the basis of the proceedings in their entirety that the substantial rights of the accused have been prejudicially affected. It also seems to us that the policy of Article 59 (a) is highly salutary and as applicable to military as to civilian criminal law administration—perhaps in essence more so. In view of the many treatments of the matter elsewhere—in judicial decisions, in professional association resolutions, in Congressional reports, and in legal periodical literature—it seems unnecessary to review in detail here the history of the abuses which led to the agitation for reform in this area, or to the progress of previous nonmilitary legislation through the various sessions of Congress to final enactment without debate. It is clear, however, that Article 59 (a), as well as other similar federal and state legislation, grew out of a widespread and deep conviction concerning the general course of review in American criminal cases, and the fear that our appellate courts in criminal cases had become in truth "impregnable citadels of technicality." See Kotteakos v. United States, 328 US 750, 759–760, 90 L ed 1557, 66 S Ct 1239, notes 11–14. The object of "harmless error" legislation, we are told by Mr. Justice Rutledge in the Kotteakos case, supra, is:

". . . To substitute judgment for automatic application of rules; to preserve review as a check upon arbitrary action and essential unfairness in trials, but at the same time to make the process perform that function without giving men fairly convicted the multiplicity of loopholes which any highly rigid and minutely detailed scheme of errors, especially in relation to procedure, will engender and reflect in a printed record." (p. 760)

Two possible limitations on the manifest and proper policy of Article 59 (a) and similar legislation ▮▮ have been proposed elsewhere, and we mention them with approval. First, where the error involves a recognizable departure from a constitutional precept, and, second, where it constitutes a departure from an express command of the legislature. See Kotteakos v. United States, supra. It has been suggested that in both of these situations great care should be exercised in the application of "harmless error" legislation, and that in some instances, at least, the otherwise beneficial policy of such legislation should give way to more compelling considerations. A basis for neither of these qualifications is found in the problem in its present setting, however, and we proceed to an inquiry into the possibility of material prejudice in the instant case.

## V

We have searched the record with care and find no suggestion whatever

216

of specific prejudice—that is, of prejudice operating against the accused in this particular case. The evidence of his guilt is overwhelming, and the commission of the offense charged was virtually admitted by him in an unsworn statement in mitigation submitted after findings of guilty. Moreover, the record reflects that the conduct of Lieutenant Barton, trial counsel, was proper in every respect. A brief, but complete and compelling, case for the prosecution was introduced with objectivity and detachment, and no slightest hint of extravagance or excessive zeal has been discovered either in the government's presentation or in an abbreviated closing argument by trial counsel. We find, in short, no shadow of showing in the record that the accused in this case was or could have been prejudiced by the fact that the interests of the government therein were represented by the accuser who had perforce conducted an informal presignature inquiry into its facts.

Nor do we find a basis for the belief that what might be described as general prejudice should be deemed to exist by virtue of the fact that Lieutenant Barton, the accuser, also served as trial counsel. We are confident that our meaning in the use of this standard will not be misapprehended. Report has already been made of the limitations on the "harmless error" formula set up in the Kotteakos case, supra. At this point it should be said that we are not at all sure that equal caution should not also be exercised in the invocation of this otherwise wholesome principle in perhaps one further setting. We have in mind here a situation in which the error consists not in a violation of constitutional or legislative provisions, but involves instead an overt departure from some "creative and indwelling principle" — some critical and basic norm operative in the area under consideration. Such a compelling criterion we find within the sphere of this Court's effort in the sound content of opposition to command control of the military judicial process to be derived with assurance from all four corners of the Uniform Code of Military Jus-

tice. Is this criterion violated by permitting the accuser to serve as trial counsel? We think not. While this duality of function does not perhaps reflect the very wisest and best policy, we cannot conclude that it necessarily contravenes the concept which demands the complete separation of the court-martial hearing itself from the pre-trial proceedings which are permissibly more nearly under the direct control of command.

While we have no disposition to press the analogy unduly, it is recognized that a similar practice is often followed in the criminal courts of the civilian community. In this setting, of course, one frequently finds a prosecuting attorney investigating a probable offense, subsequently filing an appropriate information, and thereafter prosecuting the cause to conviction. Certainly Congress does not appear to have felt that there was danger per se in the practice, for nowhere in the Uniform Code of Military Justice is it forbidden that an accuser act as a member of prosecution personnel—and the same observation may be made of the draftsmen of the Manual for Courts-Martial, United States, 1951. Evidence that this was not due to oversight in the preparation of Code provisions is found in Article 25(d)(2) and Article 26(a) as well as in Article 27(a) which deals with the qualifications of trial and defense counsel. The first of these Articles has to do with the personnel of the court-martial, and it is expressly and properly forbidden that the accuser sit as a member of the tribunal which tries the accused. The second treats of the law officer, and again we find the accuser deprived of eligibility to serve in this capacity. Yet in Article 27(a) no reference is made to a disqualification of the accuser to act as trial counsel. Further testimony of the same nature from the Manual's draftsmen is found in paragraph 61f (4) where a conditional disqualification of the accuser to serve as defense counsel is provided, but no mention is made of any sort of similar ineligibility in the case of trial counsel. We find no inconsistency between these posi-

**217**

tions and that taken in paragraph 64 of the Manual, earlier set out in this opinion. Actually the reverse is true. It will be noted that care was taken in the terminal portion of the paragraph to exclude from the definition of the term "investigating officer" the trial counsel who necessarily must conduct an investigation into the facts of the case in the performance of his duties as such. If this investigation should not form a basis for disqualification—and in the very nature of things it could not have been said to do so—we cannot see that the more casual inquiry of the accuser should produce another result. Nor can we see that the location in time of the former investigation after the filing of charges and the latter before such filing should be deemed a relevant consideration.

It is recognized, of course, that instances may appear in which one who has served as accuser should be disqualified for later service as trial counsel in the same cause. It is even granted that the basis for this disqualification may in some cases be directly related to his previous connection with the case. However, it is one thing to say that an accuser should be disqualified because he is in fact biased, prejudiced, or hostile—even though these qualities may derive from his accusation—and quite another to say that an accuser qua accuser is ineligible to serve as trial counsel. See Manual for Courts-Martial, United States, 1951, paragraph 44b, earlier set out herein.

It has been suggested, however, that departure from a specific requirement of the Manual should, of ■■■■ ■ itself, constitute "general prejudice" of the type we are here discussing. We have no doubt that this may be true in a proper case if, but only if, the policy underlying the Manual requirement is so overwhelmingly important in the scheme of military justice as to elevate it to the level of a "creative and indwelling principle." The previous discussion should be persuasive that no such policy consideration exists here. However, the simplest answer to this contention lies in an explicit decision on the question we avoided earlier in this opinion—that is, whether the language of Article 27(a) of the Code and paragraph 64 of the Manual requires that the trial counsel in the case at bar be considered an "investigating officer" within the meaning of those provisions.

We find no difficulty in ■■■■ ■ saying that the inquiry conducted by the accuser here did not constitute him an investigating officer, and thus disqualify him—and we explicitly so hold. Looking first to the Code's Article 27(a) we find nothing suggesting a contrary conclusion. The language of paragraph 64 of the Manual is, however, nearer the mark—but even here we are assured that Lieutenant Barton's inquiry is not included. The question ■■■■ ■ tion at this point, it seems to us, resolves itself into the following: May one at the same time serve as accuser and as trial counsel? If this duality is permissible, by virtue of the very necessities of the situation it is not possible to argue that the trial counsel in this case had served as investigating officer within the provisions of paragraph 64. For reasons developed elsewhere in this opinion and in another connection, we do believe it to be permissible—however questionable as a matter of discretion.

## VI

It follows from what has been said that the court was not without jurisdiction to try the accused in this case, and that Lieutenant Barton did not serve as investigating officer within the meaning of Article 27(a)—and thus the certified questions are answered. The decision of the board of review is, therefore, reversed and the record returned to The Judge Advocate General, United States Navy, for action not inconsistent with this opinion.

Chief Judge QUINN concurs. Judge LATIMER concurs in result.