UNITED STATES, Appellant

v.

GEORGE A. BOUND, Hospital Apprentice, U. S. Navy, Appellee

1 USCMA 224, 2 CMR 130

No. 201

Decided March 13, 1952

CDR. Tilden L. Brooks, USN, for Appellant.
CDR. Raymond W. Glasgow, USN, for Appellee.

PAUL W. BROSMAN, Judge:

I

The accused, Bound, a hospital apprentice, United States Navy, was charged with a violation of Article 121, Uniform Code of Military Justice, 50 USC § 715. The specification alleged the wrongful appropriation of a Chevrolet automobile, the property of a Marine corporal stationed at the accused's base. Upon trial by special court-martial at Camp Lejeune, North Carolina, the accused pleaded guilty to the charge and specification, and after being properly instructed regarding the effect thereof persisted in the plea. He was convicted of the offense charged and sentenced to receive a bad-conduct discharge and to be confined at hard labor for four months. The record of trial was forwarded with approval of the findings and sentence by the convening authority. Thereafter the officer exercising general court-martial jurisdiction approved as well, but suspended execution of the bad-conduct discharge for the period of confinement and six months thereafter. The record was then considered by a board of review in the Office of The Judge Advocate General, United States Navy, which disapproved the findings and sentence and ordered a rehearing. The necessity for this action on the part of the board was based on the theory that a member of the court-martial which tried the accused had previously acted as investigating officer within the meaning and in violation of Article 25(d)(2), Uniform Code of Military Justice, 50 USC § 589. The view of the board was that the failure of the court to exclude the member in question from participating in the trial of the cause constituted such material prejudice to Bound's substantial rights as to require reversal. The case was certified to us by The Acting Judge Advocate General, United States Navy, pursuant to the provisions of Article 67(b)(2), Uniform Code of Military Justice, 50 USC § 654, and the following two issues were raised:

"(a) Was the member . . . an 'investigating officer' within the meaning of Article 25(d)(2), Uniform Code of Military Justice?

"(b) Were the substantial rights of the accused materially prejudiced, by reason of the fact that the member . . . was not forthwith excused . . . pursuant to Paragraph 62c, Manual for Courts-Martial, 1951?"

II

The record of trial in the instant case contains the following colloquy which took place prior to the arraignment of the accused:

"TRIAL COUNSEL: If any member of the court is aware of any facts which he believes may be a ground for challenge by either side against him, he should now state such facts.

"Lieutenant Jack S. May, member of the court, made the following statement:

"I was the security watch on the night this offense was committed and was called out of the movies so I could investigate it at that time. I do know a lot of facts relative to this case."

"TRIAL COUNSEL: The prosecution has no challenges for cause.

"TRIAL COUNSEL: The prosecution has no peremptory challenge.

"TRIAL COUNSEL: Does the accused desire to challenge any member of the court for cause?

"DEFENSE COUNSEL: No.

"TRIAL COUNSEL: Does the accused desire to exercise his right to one peremptory challenge against any member?

"DEFENSE COUNSEL: The accused has no peremptory challenge."

It thus appears that, although no formal pre-trial investigation within the meaning of Article 32, Uniform Code of Military Justice, 50 USC § 603, was either required or conducted in the instant special court-martial case, Lieutenant Jack S. May, a member of the court-martial, had as security watch on the night of Bound's offense conducted an informal inquiry or investigation into the facts surrounding it. It also appears that prior to the accused's plea

**225**

of guilty to the charge and specification, and following Lieutenant May's disclosure of his previous connection with the case, defense counsel at the trial declined to exercise his right of challenge —either peremptory or for cause—as to Lieutenant May.

Article 25, Uniform Code of Military Justice, supra, deals with the appointment and qualifications of members of courts-martial, and its provisions are set out hereafter in pertinent part, specifically its section (d) (2):

> "When convening a court-martial, the convening authority shall appoint as members thereof such persons as, in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament. *No person shall be eligible to sit as a member of a general or special court-martial when he is the accuser or a witness for the prosecution or has acted as investigating officer or as counsel in the same case.*" (Italics supplied)

The term "investigating officer" is not defined in Article 25 (d) (2) nor in any other Article of the Code. However, the Manual for Courts-Martial, United States, 1951, paragraph 64, purports to define the phrase in the following language:

> "Within the meaning of the fifth clause of 62f and Articles *25d(2)* 26a, and 27a, the term 'investigating officer,' as applied to a particular offense, shall be understood to include a person who, under the provisions of 34 and Article 32, has investigated that offense or a closely related offense alleged to have been committed by the accused. The term also includes any other person who, as counsel for, or a member of, a court of inquiry, or as an investigating officer or otherwise, has conducted a personal investigation of a general matter involving the particular offense; however, it does not include a person who, in the performance of his duties as counsel, has conducted an investigation of a particular offense or a closely related offense with a view to prosecuting or defending it

before a court-martial. But see 6a and 62f(6)." (Italics supplied)

Article 32, Uniform Code of Military Justice, supra, provides that "No charge or specification shall be referred to a general court-martial for trial until a thorough and impartial investigation of all the matters set forth therein . . ." shall have been made. See also Manual for Courts-Martial, United States, 1951, paragraph 34. Despite the fact that no such requirement has been provided by either the Code or the Manual in the case of trial by special court-martial, pre-trial investigations, which serve much the same purpose as the preliminary hearing of the civilian criminal procedure, do as a matter of practice precede many trials by this inferior tribunal. None was had in the instant case, however, and it is certain that Lieutenant May did not investigate charges against Bound within the meaning of Article 32.

### III

It is distinctly arguable that the functionary whose duty it is to conduct the investigation considered in the preceding paragraph, and who is always characterized as "the investigating officer," is the only official contemplated by the use of the term in the caveat contained in the terminal language of Article 25 (d) (2). See United States v. Lee, (No. 200), 1 USCMA 212, 2 CMR 118, decided this date. This is true notwithstanding the fact that the same phrase is popularly—and in some instances officially—applied in the military service to any officer designated by higher authority to conduct an investigation into matters of command interest, regardless of their connection with disciplinary affairs or military justice. It will be observed that the prohibitory language of Article 25 (d) (2) used in this connection links (1) the investigating officer, (2) the accuser, (3) a witness for the prosecution, and (4) counsel; refers to no other official; and provides that no person who has acted as such "in the same case" shall act subsequently as a member of a court-martial. By way of analogy the suggested implication is made even clearer in Article 27 (a) which deals

with a related matter—the appointment and qualifications of trial counsel and defense counsel—in which at least some degree of isolation from prior contact with the details of a court-martial proceeding on the part of these officials has been deemed important. There it is provided that:

> "No person who has acted as investigating officer, law officer, or court member *in any case* shall act subsequently as trial counsel, assistant trial counsel, or, unless expressly requested by the accused, as defense counsel or assistant defense counsel *in the same case.*" (Italics supplied)

However this may be, as we said in substance in United States v. Lee, supra, the Manual in paragraph 64, previously set out herein, takes a broader view of the content of the term "investigating officer," as used in Article 25(d)(2). Analysis of this paragraph suggests that the following persons shall be deemed to be included within the phrase's meaning:

> (1) One who has investigated the offense in question or a related offense under the provisions of Article 32.

> (2) One who has served as a member of or as counsel for a court of inquiry and as such has conducted a personal investigation of a general matter involving the offense in question.

> (3) One who as "investigating officer"—acting other than under Article 32 apparently—has conducted a personal investigation of a general matter involving the offense in question.

> (4) One who has "otherwise" conducted such a personal investigation.

It is the position of appellate defense counsel that Lieutenant May "otherwise . . . conducted a personal investigation . . . involving the particular offense." Because of this—the argument continues—he is an investigating officer within the meaning of Article 25(d)(2), through paragraph 64 of the Manual, and as such is disqualified to serve as a member of the court-martial in the case at bar.

## IV

We accept fully the argument of appellate defense counsel in this particular. There is simply no logical escape from the conclusion that Lieutenant May conducted a personal investigation into the facts of Bound's offense, and that by virtue of this action he was an "investigating officer" within the sense of paragraph 64. If he is not to be deemed within its terms the language of this portion of the Manual is meaningless. There is also no doubt that as such he was forbidden by Article 25(d)(2) to sit as a member of the court-martial which tried Bound. We, therefore, hold that error was committed in permitting him to do so once his previous connection with the case had been disclosed. In dealing with this situation the Manual has the following to say in paragraph 62c:

> "If it appears from any disclosure that the law officer or a member is subject to challenge on any ground stated in clauses (1) to (8) of 62*f*, and the fact is not disputed, the law officer or member will be *excused forthwith.*" (Italics supplied)

The language of paragraph 62f of the Manual, referred to in the body of the previous quotation, is set out below in relevant part:

> "Among the grounds of challenges for cause against members of special and general courts-martial . . . are the following:
>
> . . . . . .
>
> "(5) That he was the investigating officer as to any offense charged. See 64 for definition of investigating officer."

Whether this error should be deemed to constitute reversible error—that is, whether there is a fair risk that it materially prejudiced the substantial rights of the accused—is, however, another matter. The Uniform Code of Military Justice, Article 59(a), 50 USC § 646, provides for the area of military judicial administration the "harmless error statute" found in other federal and much state legislation, and its language is set out below:

"A finding or sentence of a court-martial shall not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused."

It seems to us that the mandate of this statutory directive is clear. We are not to reverse for error of law unless we are of opinion on the basis of the proceedings in their entirety that the substantial rights of the accused have been prejudicially affected. It also is clear to us that the policy of Article 59 (a) is highly salutary and as applicable to military as to civilian criminal law administration—perhaps in essence more so. In view of the many discussions of the matter elsewhere, it seems unnecessary to review in detail here the history and purpose of legislation of the character of Article 59(a). This is particularly true because of recent complete treatments of the very problem by this Court. See United States v. Lucas, (No. 7), 1 USCMA 19, decided November 8, 1951, 1 CMR 19, and United States v. Lee, supra. In addition see Kotteakos v. United States, 328 US 750, 90 L ed 1557, 66 S Ct 1239, cited in both the Lucas and Lee opinions.

The Lee case involved the question of whether a court-martial committed reversible error in permitting to continue as trial counsel an officer who had served as accuser and as such had made a brief preliminary inquiry into the facts of the case. In speaking of Article 59(a) as applied to the problem there before it this Court used the following language which is adopted for application to the situation involved in the present case:

"Two possible limitations on the manifest and proper policy of Article 59(a) and similar legislation have been proposed elsewhere, and we mention them with approval. First, where the error involves a recognizable departure from a constitutional precept, and, second, where it constitutes a departure from an express command of the legislature. See Kotteakos v. United States, supra. It has been suggested that in both of these situations great care should be exercised in the application of 'harmless error'

legislation, and that in some instances, at least, the otherwise beneficial policy of such legislation should give way to more compelling considerations."

A basis for neither of these qualifications is found in the problem in its present setting, however, and we proceed to an inquiry into the possibility of material prejudice in the instant case.

## V

In this connection it is to be noted that the accused pleaded guilty to the charge and specification and persisted therein after explanation. Against a background of this plea, it may be said that a consideration of the situation confronting the court-martial, together with the record of trial and the law of this phase of the case, discloses no suggestion whatever of prejudice of any nature or degree as to the findings in the case. In dealing with the effect of such a plea in a setting similar to the present one, we said in United States v. Lucas, supra:

"In practically all federal and state courts when a defendant pleads guilty to an information or indictment he has by such plea admitted all incriminating facts alleged and the statutory elements of the offense. [citing cases] A plea of guilty is a confession of guilt and equivalent to conviction. It removes from the trier of the fact any question of innocence or guilt. If the plea is regularly made there remains only the requirement by the court of imposing an appropriate sentence."

It seems clear to us that in view of the nature of his plea, the accused, Bound, could have suffered no sort of prejudicial risk as to findings by virtue of the presence on the court-martial of Lieutenant May. It does not necessarily follow, however, that he may not have suffered such a fair risk as regards the sentence aspect of the tribunal's action —and we turn to a consideration of this phase of the matter. In this connection the argument might well have been advanced—although it does not appear to have been suggested explicitly— that the danger of prejudice lay in the

■■■■■■■■■■

fact that, by virtue of his investigation, the member concerned may have become aware of facts, not admissible in evidence, and possibly aggravating in character. This knowledge—the argument would continue—might have aided him in influencing his fellow members in the imposition of a sentence more severe than might otherwise have been given.

We cannot say that this may not have been the case. By the same token, it must be conceded, we cannot say that it was. Actually, Lieutenant May's participation may have operated to produce the exactly opposite result. The inadmissible evidential facts he knew—if any—may well have been extenuating rather than aggravating in character, and indeed may have operated to benefit rather than to injure the accused. Certainly we cannot know what facts he had come across in his inquiry, nor whether they would have been admissible in evidence or the reverse. We can only be sure that whatever he knew, it was more than was known by his fellow members of the court-martial—for in view of the accused's plea of guilty, no evidence bearing on the commission of the offense was introduced by the prosecution. Likewise, we can only speculate on the quantum of the sentence in the absence of participation by a member with Lieutenant May's knowledge of details. Reference to the Table of Maximum Punishments, Manual for Courts-Martial, United States, 1951, paragraph 127e, reveals that the maximum sentence applicable to the offense of which the accused was convicted is dishonorable discharge, total forfeitures, and confinement at hard labor for two years. In the case at bar the accused was in fact sentenced to receive a bad-conduct discharge merely. No forfeiture of pay and allowances was imposed and he was sentenced to confinement at hard labor for four months only. Had Bound been tried by general court-martial, it would have been difficult to argue that Lieutenant May's presence on the court could have operated improperly to produce a substantial sentence—for in terms of comparison he simply did not receive such punishment. It must be remembered, however, that he was tried by special court-martial, which is without power to impose a sentence to dishonorable discharge or a sentence to confinement at hard labor in excess of six months. It is apparent, therefore, that despite the absence of forfeitures, the accused received a relatively severe sentence—given the punitive power of the tribunal which tried him. Under these circumstances, while it may not be said with positiveness that he was prejudiced, it cannot be denied that he may have been. In short—and without in any fashion impugning Lieutenant May's motives or conduct—we believe that there was much more than a fair risk of material prejudice to the substantial rights of the accused in this case as a result of the former's presence in the membership of the court-martial during its penal session.

In United States v. Lee, supra, the concept of general prejudice was developed in a setting similar to that of the present case. In the course of the opinion in that case the following language was used:

"Nor do we find a basis for the belief that what might be described as general prejudice should be deemed to exist by virtue of the fact that Lieutenant Barton, the accuser, also served as trial counsel. We are confident that our meaning in the use of this standard will not be misapprehended. Report has already been made of the limitations on the 'harmless error' formula set up in the Kotteakos case, supra. At this point it should be said that we are not at all sure that equal caution should not also be exercised in the invocation of this otherwise wholesome principle in perhaps one further setting. We have in mind here a situation in which the error consists not in a violation of constitutional or legislative provisions, but involves instead an overt departure from some 'creative and indwelling principle'—some critical and basic norm operative in the area under consideration. Such a compelling criterion we find within the sphere of this Court's effort in the sound content of opposition to

**229**

command control of the military judicial process to be derived with assurance from all four corners of the Uniform Code of Military Justice."

Because of the finding of a probability of specific prejudice against the accused, it is unnecessary that we inquire into the presence of general prejudice growing out of the membership in the court-martial under the facts of the instant case of one who was an investigating officer within the meaning of paragraph 64, Manual for Courts-Martial, United States, 1951. For this reason we express no conclusion on the subject at this time.

## VI

In the interest of completeness, explicit mention is now made of the possibility of waiver of objection to the membership of Lieutenant May in the court-martial by virtue of the complete failure of defense counsel at the trial to exercise the accused's right of challenge—either peremptory or for cause. Further reference is made to paragraphs 62c and 62f of the Manual, portions of which are earlier set out herein. The effect of these two sections is to provide that, where it appears that a member of a court-martial was an investigating officer within the meaning of paragraph 64, he shall be excused forthwith. Reference is also made to those parts of paragraph 62c which have not been quoted at another point in this opinion, and which read as follows:

"If the law officer is excused or the court is reduced below a quorum, the court will adjourn pending appointment of a new law officer or additional members. Except as just stated, no action is required under this paragraph (62c) with respect to any disclosure that may be made; but proceedings under this paragraph are without prejudice to any rights of challenge on either side."

It is evident from a reading of the entire paragraph that action by way of challenge by either trial or defense counsel is unnecessary to the creation of duty in a proper case to excuse forth-

with. This obligation we hold arises immediately on undisputed disclosure. It is to be noted in the present case, however, that not only did defense counsel fail to exercise the right to challenge; he stated affirmatively in response to the inquiry of trial counsel that he did not wish to challenge either peremptorily or for cause. It is argued from this, therefore, that the accused must be taken to have consented to the presence of Lieutenant May on the court. We do not accept this view.

A reading of paragraphs 62c and 62f clearly indicates that the Manual seeks to distinguish sharply between different grounds for what it characterizes as "challenges for cause." Some of these, it appears—the first eight enumerated in the latter paragraph—are deemed of great importance, and some—the remaining five—are accorded a lesser position. As to the first group, excusal is self-operating; as to the second, action is required to produce the same result. It is arguable indeed that the language of the Manual is inartificial, and that the problem before us in the present case does not properly involve a matter of challenge, but rather a flat statutory rule of disqualification. See Uniform Code of Military Justice, Article 25 (d) (2), supra. However this may be, we are assured that the mere failure of defense counsel to act in this case—and quite probably any failure to act on the basis of a ground included within the critical group—may not serve as the basis for a successful claim of waiver. It is suggested, however, that here the conduct of defense counsel extended beyond a mere failure to act and constituted an affirmative declination to challenge amounting to consent. We are not impressed by this argument. Under the usual and proper court-martial procedure a mere failure to challenge within the argument's meaning will never be found, for in every instance defense counsel will be asked of his wish to challenge for cause and to challenge peremptorily. See Manual for Courts-Martial, United States, 1951, Appendix 8a, page 507. We therefore explicitly reject the interpretation

urged above. In our opinion, in short, defense counsel's conduct in this case must be dealt with as a mere failure to challenge. It does not necessarily follow from what we have said that it might not have been possible legally for the accused, Bound, to have consented expressly to Lieutenant May's participation in the case. We find no necessity for a holding on this point. In our opinion he simply did not do so. The views we have expressed here are in accord with the best military case-law and practice. See United States v. West, 15 BR 69; United States v. Machlin, 59 BR 343; United States v. Carr, 77 BR 53; United States v. Bennett, 15 BR (ETO) 61. Compare Manual for Courts-Martial, U. S. Army, 1928, paragraph 57b; Manual for Courts-Martial, U. S. Army, 1949, paragraph 57b.

It follows from what we have said that the questioned court-martial member was an investigating officer within the meaning of paragraph 64 of the Manual, and that the substantial rights of the accused were materially prejudiced by failure to excuse him forthwith—and thus the certified questions are answered. The decision of the board of review is, therefore, affirmed.

Chief Judge QUINN and Judge LATIMER concur.