UNITED STATES, Appellee

v.

GEORGE C. BERRY, Private First Class, U. S. Army, Appellant

1 USCMA 235, 2 CMR 141

236

Decided March 18, 1952

1st LT. John D. Calamari, USA, for Appellant.

MAJ. Augustus A. Marchetti, USA, and 1st LT. Eugene L. Grimm, USA, for Appellee.

### Opinion of the Court

PAUL W. BROSMAN, Judge:

The accused, Berry, was convicted by general court-martial held in Yoju, Korea, of involuntary manslaughter, in violation of Article of War 93, 10 USC § 1565; assault with a dangerous weapon and careless discharge of a firearm, both in violation of Article of War 96, 10 USC § 1568. The trial having been held on May 4, 1951, its procedure was governed by the Articles of War and the Manual for Courts-Martial, U. S. Army, 1949. Petitioner was sentenced to be dishonorably discharged, to forfeit all pay and allowances, and to be confined at hard labor for three years. The convening authority approved. Thereafter the record of trial was considered by a board of review in the Office of The Judge Advocate General, United States Army, which set aside the finding of guilty under the specification alleging assault with a dangerous weapon as incorrect in law, but approved the sentence as imposed. We granted review on October 25, 1951, for the purpose, among others, of inquiring whether the record discloses a prejudicial failure by the law member at the trial to perform the duties imposed on him by law.

Disposition of this problem requires that we set out in pertinent part two of the Articles of War bearing on the duties and status of the law member. A portion of Article 8, 10 USC § 1479, is set out below:

"The authority appointing a general court-martial shall detail as one of the members thereof a law member who shall be an officer of the Judge Advocate General's Corps or an officer who is a member of the bar of a Federal court or of the highest court of a State of the United States and certified by the Judge Advocate General to be qualified for such detail: Provided, That no general court-martial shall receive evidence or vote upon its findings or sentence in the absence of the law member regularly detailed. The law member, in addition to his duties as a member, shall perform the duties prescribed in article 31 hereof and such other duties as the President may by regulations prescribe."

The following language from Article 31, 10 USC § 1502, is also of interest:

"The law member of a general court-martial or the president of a special court-martial, shall rule in open court upon interlocutory questions, other than challenge, arising during the proceedings: Provided, That unless such ruling be made by the law member of a general court-martial, if any member object thereto, the court shall be cleared and closed and the question decided by a majority vote, viva voce, beginning with the junior in rank: And Provided further, That any such ruling made by the law member of a general court-martial upon any interlocutory question other than a motion for a finding of not guilty, or the question of the accused's sanity, shall be final and shall constitute the ruling of the court; but the law member may in any case consult with the court, in closed session, before making a ruling, and may change any ruling made at any time during the trial."

The substance of these Articles is accorded more complete treatment in appropriate paragraphs of the Manual for Courts-Martial, U. S. Army, 1949. Paragraph 40 provides in part as follows:

**237**

"As law member, his principal duty is to rule upon interlocutory questions (51d) and to advise the court on questions of law and procedure which may arise in discussions in closed session. Such advice may include an explanation as to the elements necessary to establish the offense charged, what lesser offenses, if any, are included in the offense charged, the possible findings the court may make by way of exceptions and substitutions, the maximum punishment for each offense with which accused is charged, and if requested, the proper form in which to state the findings and sentence reached by the court. As a member he has the duties, powers, and privileges of members in general. In accordance with Article 31, it is the duty of the law member before a vote is taken to advise the members in open court concerning the presumption of innocence and the nature and quantum of evidence required to sustain findings of guilty. See 78a, 78d and 125a."

The following excerpts from paragraph 51 give further details:

"a. Statutory provisions. — The law member of a general court-martial shall rule in open court on all interlocutory questions other than challenges arising during the proceedings. Any ruling made by the law member upon an interlocutory question, other than a motion for a finding of not guilty (71d), or the question of accused's sanity, including whether the same has become an issue in the trial (112), shall be final and shall constitute the ruling of the court; but the law member may in any case consult with the court in closed session before making a ruling and may change a ruling made at any time during the trial (A. W. 31). See 51d.

"b. Applicability of this paragraph.—This paragraph (51) applies to all interlocutory questions arising during the proceedings (i. e., all questions other than the findings and sentence) except the question whether a challenge shall be sus-

tained. Any statement or indication in this manual to the effect that a certain question is to be decided by the court is not to be understood as making an exception to the foregoing rule. See, for example, 46b.

. . . . . . .

"d. Rulings by the law member.— A ruling by the law member on an interlocutory question other than on a motion for a finding of not guilty or the question of the accused's sanity, being final so far as concerns the court, no repetition of the ruling or announcement of its finality is necessary. Rulings by the law member on a motion for a finding of not guilty and on the question of the sanity of an accused are final unless objected to by a member of the court. Upon such objection the court will be closed and the question decided by vote of the court. See 51f."

The record of trial in the case at bar reflects palpable violations of these provisions of the Articles of War and of the 1949 Manual, which were in effect at the time of the commission of the present offenses and at the time petitioner was charged and tried therefor. After the accused had entered pleas of not guilty, defense counsel moved for dismissal of the assault specification on the ground that it constituted an improper multiplication of charges. The president of the court-martial denied the motion, although under the provisions of Article of War 31, supra, and paragraph 51a of the Manual, the accused was entitled to have the ruling of the law member on the question of law thus raised.

At a later point in the court-martial proceeding a written confession was offered in evidence by the prosecution and opposed by the defense on the ground of involuntariness. Testimony was received on the issue of volition, and the accused took the stand to testify concerning the circumstances surrounding its execution. Although it was his specific duty to do so, the law member wholly failed to rule on the legal admissibility of the confession. Instead the president closed the court,

and after consideration and reopening, announced that the document would be received in evidence.

Thereafter at the conclusion of the case for the government, defense counsel renewed his motion to dismiss the assault specification on the ground of multiplicity. That there was probable merit in this motion is demonstrated by the subsequent action of the board of review in setting aside the finding of guilty of this specification as incorrect in law. Yet the president, not the law member, once more denied the defense motion.

At the close of the case defense counsel moved for findings of not guilty. It will be observed that this is one of those interlocutory questions as to which a member of the court-martial may object to the ruling of the law member. Manual for Courts-Martial, U. S. Army, 1949, paragraph 51d, supra. However, the law member made no initial ruling, and according to the record, the president denied the motion. Even had the law member ruled to the contrary, the president of course possessed no authority whatever to overrule this determination unilaterally. Other court-martial members were afforded no opportunity to exercise their prerogative to object to this ruling.

Thereafter, and following arguments of counsel, the president, not the law member, also advised the accused of his rights concerning appearance in his own behalf. The advice given was neither incomplete nor incorrect and, therefore, could not have harmed the accused in any manner. However, it constitutes a further instance of the exercise by the president of the law member's functions. While not strictly relevant to the present issue, it is perhaps worth noting that various rulings of the law member, which we need not explore here, suggest not too great familiarity with the rules of evidence.

Error is evident in this record, but the question of its prejudicial character yet remains. In this connection, therefore, it becomes necessary to consider the terms of Article of War 37, 10 USC § 1508. This Article sought to provide for the area of military judicial administration the substance of the "harmless error" statute found in other federal and much state legislation, and its language is set out below:

"The proceedings of a court-martial shall not be held invalid, nor the findings or sentence disapproved in any case on the ground of improper admission or rejection of evidence or for any error as to any matter of pleading or procedure unless in the opinion of the reviewing or confirming authority, after an examination of the entire proceedings, it shall appear that the error complained of has injuriously affected the substantial rights of an accused. . . ."

The same intention was evinced by Congress in its adoption of Article 59 (a), Uniform Code of Military Justice, 50 USC § 646, the provisions of which have superseded those of the Articles of War. Article 59(a) reads as follows:

"A finding or sentence of a court-martial shall not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused."

While it is apparent that the language of the two Articles differs, and while it is arguable that the terms of the second are broader than those of its predecessor, we do not propose to distinguish between them for the purposes of this case. It seems to us that the mandate of each is clear in its application to the present problem. We are not to reverse for error of law unless we are of opinion on the basis of the proceedings in their entirety that the substantial rights of the accused have been prejudicially affected. It also seems clear to us that the policy of Article of War 37, supra, and Article 59 (a), Uniform Code of Military Justice, supra, is highly salutary and as applicable to military as to civilian criminal law administration—perhaps in essence more so. United States v. Lee (No. 200), 1 USCMA 212, decided March 13, 1952, 2 CMR 118.

We have recently examined the content of the phrase "material prejudice" in our opinion in the Lee ■ case, supra. There we enunciated two approaches to the question of prejudice. The first and more obvious of these was denominated specific prejudice and described as that to be derived from the facts and circumstances of the particular case before the court and either more or less demonstrably operative against the accused there. Individual applications of this notion are to be found in United States v. Zimmerman (No. 261), 1 USC MA 160, decided February 7, 1952, 2 CMR 66; United States v. Bound (No. 201), 1 USCMA 224, decided March 13, 1952, 2 CMR 130; United States v. Rhoden (No. 153), 1 USCMA 193, decided February 26, 1952, 2 CMR 99, to mention some of many. The second concept we termed general prejudice. This was characterized as the product of an "overt departure from some 'creative and indwelling principle'—some critical and basic norm operative in the area under consideration." United States v. Lee, supra. Such a compelling criterion—we there suggested by way of example—is to be found within the sphere of this Court's effort in the "sound content of opposition to command control of the military judicial process to be derived with assurance from all four corners of the Uniform Code of Military Justice." The complete independence of the law member and his unshackled freedom from direction of any sort or nature are, we entertain no doubt, vital, integral, even crucial, elements of the legislative effort to minimize opportunity for the exercise of control over the court-martial process by any agency of command. It follows that any abdication by the law member of his statutory duties and an attendant usurpation of those functions by the president—much more directly a representative of the convening authority —must be viewed with stern suspicion. This view is abundantly confirmed by both the Articles of War, as amended through 1948, and the Manual for Courts-Martial, U. S. Army, 1949, and

**240**

even more convincingly by the legislative history of the Uniform Code of Military Justice and the relevant contents of the Manual for Courts-Martial, United States, 1951.

The Articles of War, as amended, and the 1949 Manual make clear that the law member's position ■ with respect to a court-martial is closely analogous to that of the judge in the criminal law administration of the civilian community. Basically and obviously the law member, like the judge, is the final arbiter at the trial level as to questions of law. He is the court-martial's advisor and director in affairs having to do with legal rules or standards and their application. He is the external and visible symbol of the law in a process which has long been characterized as juristic and must be genuinely regarded as such. This conception is in no sense destroyed by the provision that, on two possible interlocutory questions involving mixed ingredients of law and fact, the court is given what has been described as a "veto power" over the law member's rulings. Nor is it at all weakened by the required participation, under the Articles of War, of the law member in the factual determination of guilt or innocence. That he is given in some respects less and in others more power than his civilian counterpart is not material here. We are concerned only with the substance—the gist and kernel —of his place and function.

Although the Uniform Code of Military Justice was not effective at the time of trial in the case at bar, it seems appropriate to refer briefly to its related provisions. The only substantial change made by the Code in the status of the law member was to deprive him of the privilege of participation in the deliberations of the court-martial— and this necessarily imposed upon him the duty of instructing the tribunal's members as to the elements of the offenses alleged and of charging as to the presumption of innocence and comparable matters. See Articles 26 and 51, Uniform Code of Military Justice, 50 USC §§ 590, 626. He became the

"law officer" instead of the "law member." The legislative background of the Uniform Code makes clear beyond question Congress' conception of the law officer as a judge to all material intents and purposes. Professor E. M. Morgan, chairman of the Secretary of Defense's committee, whose efforts resulted in the confection and passage of the Code, stated in response to Congressional Committee inquiry into the place of the law officer: "Well, the fundamental notion was that the law officer ought to be as near like a civilian judge as it was possible under the circumstances." House Hearings on Uniform Code of Military Justice, Committee on Armed Services, p 607. Like expressions may be found throughout House and Senate hearings and reports on the Uniform Code of Military Justice. HH, page 1153; SH, pages 40, 57, 287, 295; SR, page 6. Moreover, repeated reference is made in these sources to the necessity for professional legal training on the part of the law officer, which requirement was, of course, adopted. Article 26, Uniform Code of Military Justice, supra. See also Article of War 8, supra. Mention was also made during Congressional hearings of the necessity for strengthening the law officer's power and position in order that he might be able to make independent decisions on legal issues free from possible influence by court members senior to or more influentially placed than he. See House Hearings, pages 671–673.

There can be no doubt, we believe, concerning the essential resemblance of the law member under the ██ Articles of War to the law officer under the Uniform Code. There can also be no doubt of the nature of Congressional intent as to the function and authority of both within the organization and operation of a court-martial. We are equally without uncertainty as to the presence of serious inconsistency between these conceptions and the conduct of the law member in the case at bar. If the president of a general court-martial— freely selected as he is by the convening authority, possibly more concerned with military discipline than with law administration, and almost certainly less well informed within the latter sphere under ordinary circumstances— is able to usurp the judgelike functions of the law member, then, we are much afraid, at least one barrier interposed by Congress in the path of what has been popularly characterized as "command influence" has been weakened, if not removed.

We recognize, of course, that, on occasion through inadvertence or momentary indecision, a law member or law officer may fail to rule promptly on an issue before him. We have observed instances of this sort in which the president has stepped into the breach and acted. Isolated and minor examples of this nature do not concern us greatly. In the instant case, however, petitioner was denied, not once but repeatedly, the right to have the court-martial's counterpart of the judge rule on issues properly raised by his counsel and presenting substantial questions of law. We need not decide whether the law member deliberately failed to carry out the responsibilities entrusted to him, or whether he was intimidated into inaction by an aggressive president. The record of trial helps us but little on this question; the fixing of blame is not our purpose here; and the matter is of little moment in any event. Whatever the explanation, the record discloses an inherently and generally prejudicial disregard for an important segment of the procedures deemed necessary by Congress in the establishment of a scheme of military law administration more nearly in accord with the American system of criminal justice. To condone the practices reflected in this record would be to invite subversion of what we cannot escape regarding as an overriding policy of vital import—a "critical and basic norm operative in the area" of military justice.

It will be observed that in our determination of the question before us in this case we have not sought for evidence of what has been described elsewhere as specific prejudice. It has been suggested that we should have done so, and urged as well that there

is an ample showing in the record that the substantial interests of the accused, Berry, were materially prejudiced under the circumstances of the particular case. On the other hand it is argued that prejudice in its narrower connotation is not present. This argument is based on the theory that no action of the president is shown to have been erroneous in law save one—and that this single unsound ruling was corrected by the board of review in setting aside the finding of guilty under the assault specification. We have chosen not to deal at all with this aspect of the matter, but rather to bottom our determination of the case on the broader ground developed in preceding paragraphs.

Defense counsel has argued ably that, apart from the irregularities with which we have concerned ourselves earlier in this opinion, there is insufficient evidence to warrant conviction of the accused of involuntary manslaughter as alleged. There may be color to this contention, but in view of our decision on the procedural issue we need not and do not pass on the question. However, we do deem it advisable to suggest that, in the event of rehearing, appropriate consideration be given to claimed insufficiencies in the evidence disclosed in the record now before us.

It follows from what we have said that the decision of the board of review is reversed. The record of trial will be returned to The Judge Advocate General, United States Army, for action consistent with the views expressed herein.

Chief Judge QUINN concurs.

GEORGE W. LATIMER, Judge (concurring in the result):

I concur in the result.

I agree that the cause should be reversed, but do so on the narrow ground that the trial before the court-martial was so lacking in the essentials of military judicial procedure that the rights of this accused were substantially prejudiced. The Court's opinion goes much further and rationalizes on general

**242.**

prejudice, which appears to me unnecessary in this setting, and contrary to the clear mandate of Congress. It is to reserve from my concurrence an approval of that concept which leads me to file this opinion.

Article of War 37 provides as follows:

"The proceedings of a court-martial shall not be held invalid, nor the findings or sentence disapproved, in any case on the ground of improper admission or rejection of evidence or for any error as to any matter of pleading or procedure unless in the opinion of the reviewing or confirming authority, after an examination of the entire proceedings, it shall appear that the error complained of has injuriously affected the substantial rights of an accused. . . ."

The test laid down by this provision is simply this: Did the procedure adopted in this case injuriously affect a substantial right of the accused? If so, reversal is required. If not, then the finding and sentence must be affirmed.

The Court's opinion seems to hold that no specific prejudice resulted to the accused, but because of a belief that to place our stamp of approval on procedural errors would tend to weaken the military judicial system we should reverse. It should be obvious from the quoted Article of War that Congress contemplated errors of law might occur in the trial of a member of the Armed Forces. It should be further obvious that Congress commanded that, even though an appellate tribunal should find error, a reversal should not be ordered unless, upon an examination of the entire proceeding, the particular error substantially affected the rights of the accused on trial.

I agree that the law member should not abdicate in favor of the president of the court, and this is more important under the new Code than it was under the old procedure. The Articles of War contemplated that the law member could consult with members of the court prior to ruling on an interlocutory question and he was permitted to

vote on the findings and sentence. Under the present practice he is divorced from membership on the court and from his advisory capacity and he more nearly approaches the role of a judge in civilian practice. Accordingly, under the procedure in vogue when this case was tried the interference by the president was less offensive than it would be under the present-day legislation. But, in both instances, the touchstone is prejudice.

In the case at hand I find no difficulty in arriving at the conclusion that the accused was not accorded a fair trial, and that to me is prejudice. At the inception of the hearing and upon completion of the government's case there was presented an important and rather involved question of law and one which, in my opinion, should have been carefully considered by a person trained in the law. Moreover, during the course of the hearing there were other questions of law and preliminary questions of fact which should have been ruled upon by the law member before submission of the case to the court.

The first question presented was whether there was a multiplicity of charges arising out of a single act. The discussion before the court-martial by counsel for both parties directed attention to the legal principle involved and there was respectable authority presented in the argument which indicated that a ruling in favor of the accused might be proper. As suggested in the Court's opinion, the board of review reversed specification 1 of Charge II because it was incorrect in law, and the only legal issue involved was the one raised before, but not ruled on by, the law member.

The second important question presented to the law member was whether the confession of the accused was inadmissible because of being involuntary. This involved a mixed question of law and fact and under correct trial procedure presented a preliminary question which should have been decided by him. If his ruling had been adverse to the accused, then the court would have had the opportunity to evaluate the evidence and arrive at its own conclusion. However, if the ruling of the law member had been favorable to the accused the confession would not have been before the court-martial for consideration.

Whether or not the court ruled rightly on these two matters is a question which need not be decided. At least, it is arguable that on the former a ruling in favor of the accused should have been made. But, be that as it may, Congress commanded that an accused have questions of law and preliminary questions of fact decided by a law member who possessed certain qualifications. Here that command was ignored. To say that bypassing the law member is not prejudicial to the man on trial is to say that any reviewer of trial or trier of fact can be eliminated without harm to the individual on trial.

I believe that when Congress authorized preliminary rulings by a legally trained person and that right is refused there is involved a prejudicial denial of a right of substance. It is more than a belief that some overarching principle of general prejudice permeates the atmosphere of the court room. It is the refusal to grant to the accused a fundamental right guaranteed to him by the Articles of War. If we are permitted to reason by analogy with the civilian practice this, to me, smacks of a judge allowing the foreman of a jury to decide questions of law and admissibility of confessions. In the final analysis there is involved in these particular rulings a knowledge of the law reinforced by judgment and discretion. A law member may, within bounds of reason, disagree with the court and an accused should not be precluded from having the advantage of this area of disagreement.

It is entirely within the bounds of reason to say that had the law member been free to exercise his judgment, uncontrolled by the president, one serious charge would not have been before the court for consideration. Furthermore, it is a fair assumption that had that result been reached the sentence in this

**243**

case would have been reduced accordingly. My concurrence is, therefore, based on my belief that the accused was denied one of the principal safeguards erected to protect him, and that this denial was prejudicial to him.