UNITED STATES, Appellee

v

PHILIP CUNNINGHAM, Damage Controlman, Second Class,
U. S. Navy, Appellant

12 USCMA 402, 30 CMR 402

No. 14,760

Decided May 26, 1961

*Lieutenant Colonel M. G. Truesdale*, USMC, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Leo F. O'Brien*, USN.
*Lieutenant Commander Raymond O. Kellam*, USN, argued the cause for

Appellee, United States. With him on the brief was *Lieutenant Martin Drobac*, USNR.

## Opinion of the Court

HOMER FERGUSON, Judge:

Tried by general court-martial, the accused was found guilty of aggravated arson, in violation of Uniform Code of Military Justice, Article 126, 10 USC § 926, and sentenced to bad-conduct discharge, forfeiture of all pay and allowances, confinement at hard labor for three years, and reduction to the lowest enlisted grade. After making some modifications in the findings, the convening authority approved the sentence. The board of review affirmed, and we granted accused's petition for review on the issue whether the accuser acted as the pretrial investigating officer.

On November 9, 1959, a fire broke out aboard the U. S. S. MIDWAY. Before it could be extinguished, it caused considerable damage to the ship. A formal board of investigation was immediately convened to inquire into the circumstances. The accused was not a party to this inquiry. On November 20, 1959, however, he became implicated as the result of a statement which he executed at the request of agents of the Office of Naval Intelligence. On November 22, 1959, a report of the pretrial investigation was prepared. It was signed by Lieutenant Junior Grade B. W. Cochran, Jr., as investigating officer. *Inter alia,* it recites that "I have investigated the charges (Exhibit 1) appended hereto."

Attached to the report of investigation is a charge sheet alleging the offense of arson. While it is unsigned, the typed name and grade of the accuser appear as "B. W. COCHRAN, JR., LTJG." Additionally, the affidavit to the charges has been completed and indicates that Lieutenant Cochran appeared before the Executive Officer, U. S. S. MIDWAY, on November 22, 1959, and "signed the foregoing charges and specifications under oath that . . . he either has personal knowledge of or has investigated the matters set forth therein." The charge sheet is dated November 22, 1959, and was received by the Commanding Officer, U. S. S. MIDWAY, at 8:00 a. m. on that date.

On the same day, the Commanding Officer, U. S. S. MIDWAY, forwarded the charges and report of investigation to Commander, Naval Forces, Japan, with a recommendation that they be tried by general court-martial. The staff legal officer's advice, dated December 4, 1959, also recommended reference of the case to trial by general court-martial. This action was accomplished by the Commander, Naval Forces, Japan, on December 8, 1959. However, the actual reference was recorded on a new charge sheet dated December 2, 1959. These charges were also signed by Lieutenant Cochran on that date before the Executive Officer, U. S. S. MIDWAY. These "new" charges, identical in every respect to those originally prepared, were made known to the accused on the date of their execution.

Subsequently, the charges were withdrawn from trial by the Commander, Naval Forces, Japan, and transmitted to the Commandant, 12th Naval District, for disposition in view of the departure of the U. S. S. MIDWAY for the United States. The latter officer, upon the advice and recommendation of his staff legal officer, referred the charge sheet dated December 2, 1959, to a general court-martial on March 28, 1960.

On April 13, 1960, accused's counsel requested a new pretrial investigation at which additional Government witnesses might be required to appear and to be examined under oath. These witnesses were not called at the original pretrial inquiry. On April 28, 1960, the convening authority denied the request.

At the trial, the accused again moved for a new pretrial investigation. As a basis therefor, he pointed out that the investigating officer was the accuser and that the prosecution intended to call some sixteen witnesses who had not appeared at the original preliminary

hearing. The law officer refused to order a new investigation, but offered the defense counsel a continuance to interview those witnesses who had not previously appeared. Maintaining its objection, the defense determined that the continuance was unnecessary unless an investigation was also to be ordered.

Code, supra, Article 32, 10 USC § 832, provides pertinently:

"(a) No charge or specification may be referred to a general court-martial for trial until a thorough and impartial investigation of all the matters set forth therein has been made. This investigation shall include inquiry as to the truth of the matter set forth in the charges, consideration of the form of charges, and a recommendation as to the disposition which should be made of the case in the interest of justice and discipline."

A pretrial investigation conducted under the provisions of Code, supra, Article 32, is designed to obtain an impartial inquiry into the facts and circumstances surrounding the charges against the accused and to gain a soundly conceived recommendation concerning their disposition. See, generally, Murphy, *The Formal Pretrial Investigation*, Military Law Review, April 1961 (DA Pam 27-100-12), page 1. It also may serve to perpetuate testimony for the Government and the defense. United States v Eggers, 3 USCMA 191, 11 CMR 191. It furnishes the accused with a discovery procedure. United States v Allen, 5 USCMA 626, 18 CMR 250. In short, it is an important pretrial right from the standpoint of the accused and, at the same time, affords many benefits to the Government.

Obviously, appointment of an accuser as the pretrial investigating officer is inconsistent with the codal requirement of "a thorough and impartial investigation" of the charges. Code, supra, Article 32. We have heretofore pointed

out some of the evils which may flow from having one pass judicially on his own earlier handiwork. United States v Turner, 7 USCMA 38, 21 CMR 164; United States v Renton, 8 USCMA 697, 25 CMR 201; United States v McGary, 9 USCMA 244, 26 CMR 24. As we stated in United States v Renton, supra, at page 701:

". . . Human nature being what it is, the very fact of being called upon to condemn or countenance one's own workmanship cannot create a healthy outcome and less so when the outcome concerns the accused's denial of substantial rights."

The Government does not deny the applicability of this judicial concept to the selection and appointment of an investigating officer under the provisions of Code, supra, Article 32. It concedes that an accuser is disqualified so to pass on the charges which he has preferred and points to the embodiment of that principle in the Manual for Courts-Martial, United States, 1951, at page 44.[1] Nevertheless, it contends that Lieutenant Cochran was not an accuser at the time of the investigation, arguing that he merely signed the charges after completing his examination into the incident from which they arose. The Government's position is based principally upon a remark made by a Navy investigator during the original pretrial to the effect that he obtained accused's statement "yesterday" and other evidence indicating the statement was actually given on November 20, 1959. From this, the Government infers that Cochran performed his investigative function on November 21, 1959, and, as a result of what he learned, preferred charges and simultaneously filed a formal report of investigation on November 22.

Assuming without deciding that the order in which the investigating officer performed his dual role might affect the question before us, we believe that the Government's argument here rests

[1] ". . . Neither the accuser nor any officer who is expected to become the law officer or a member of the prosecution or defense upon possible trial of the case will be designated as investigating officer." [Manual, supra, paragraph 34a.]

upon too scant a foundation. Initially, we note that the record demonstrates that trial and defense counsel agreed before the law officer that the Article 32 proceedings were had on November 22. Secondly, Lieutenant Cochran's report of investigation bears that date and expressly states that he had investigated the sworn charges annexed to the report as an exhibit. These charges bear his name as accuser and their jurat indicates he appeared before the Executive Officer and took an oath to their basis in fact. To hold that he had no charges before him when he conducted a formal pretrial investigation at which accused was represented by counsel and several witnesses examined would impute to him a most irregular course of conduct. Indeed, if such be the case, we wonder why the prosecution, with the witnesses and contravening proof apparently available, made no attempt to overcome the showing made by the accused's counsel before the law officer. In short, we believe the Government's seizure upon an isolated bit of testimony is insufficient to rebut the demonstration upon the whole record that Lieutenant Cochran prepared the charges as accuser and thereafter served as pretrial investigating officer. In reaching that conclusion, we have not overlooked the unexplained substitution on December 2, 1959, of a new charge sheet alleging an identical offense. The fact that it actually bears Cochran's signature reinforces our belief that he was the accuser. However, the total lack of other information concerning its insertion in the proceedings after completion of the investigation and before trial renders it meaningless as indicative of the order in which the Article 32 proceedings and the preference of charges occurred.

Left for consideration is the question of prejudice, for it is clear that defects in preliminary hearings must be measured by the rod of specific harm to the accused. United States v Nichols, 8 USCMA 119, 23 CMR 343; United States v Parker, 6 USCMA 75, 19 CMR 201. Its presence here is incontestable. Sixteen apparently available and important witnesses for the prosecution were not called at the investigation. Little effort was made to develop the incendiary nature of the fire other than to adduce evidence relating to accused's subsequently repudiated confession. In short, the accused's right to discovery and to cross-examine the proposed witnesses under oath was most severely abridged. As noted by Judge Latimer in United States v Nichols, supra, at page 128:

". . . There is a distinct advantage in having a dress rehearsal, and Congress has given that privilege to an accused. When it is taken away, among other things, the opportunity to probe for weaknesses in the testimony of witnesses is denied; the probability of developing leads for witnesses who may be of assistance to the defense is decreased; and, the contingency of reducing the crime to one lesser than the one alleged is defeated. In this particular instance, the accused was denied at least the first two, and that was prejudicial to his defense."

We cannot leave this case without wondering why action was not taken by the convening authority or the law officer to correct this error when the accused made timely complaint. Not only would this have eliminated the expense which necessarily follows from such errors as these, but the untoward delay which has resulted and which will result in the final disposition of these charges would have been completely avoided. We once more remind those charged with duties in connection with military justice of the judicial character of pretrial procedures and suggest that they be treated with the deference due important rights. In the words of the late Judge Brosman:

". . . [U]nder the Uniform Code, the filing, investigation and referral of general court-martial charges are parts of no game; neither do they constitute steps in the paternalistic imposition of sanctions for the violation of club rules. Instead, these and related procedures constitute the elements of that which is a juristic event of substantial gravity—one demanding the very highest

sort of professional responsibility and conduct from all attorneys involved." [United States v Green, 5 USCMA 610, 617, 18 CMR 234.]

The decision of the board of review is reversed and the record of trial is returned to The Judge Advocate General of the Navy. Accused is entitled to a new pretrial investigation, following which a rehearing may be ordered.

Chief Judge QUINN concurs.