UNITED STATES, Appellee

v

LUVERNE L. YOUNG, Acting Sergeant, U. S. Marine
Corps, Appellant

13 USCMA 134, 32 CMR 134

No. 15,581

June 8, 1962

*Lieutenant Colonel M. G. Truesdale*, USMC, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Eric L. Keisman*, USNR.

*Major Elvin R. Coon, Jr.*, USMC, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Commander Leo F. O'Brien*, USN.

### Opinion of the Court

KILDAY, Judge:

The accused was brought to trial before a general court-martial convened at Camp Courtney, Okinawa, charged with the following violations of the Uniform Code of Military Justice: four specifications of larceny of United States military property, contrary to Article 121, 10 USC § 921; four counts of unauthorized sale of the same items, violative of Article 108, 10 USC § 908; a single charge of intentionally inflicting grievous bodily harm upon one Lance Corporal Breslin, in contravention of Article 128, 10 USC § 928; and two specifications alleging, respectively, conspiracy to commit the offense of larceny of Government property, and conspiracy to commit assault upon Corporal Breslin, violative of Article 81, 10 USC § 881. The accused entered a plea of not guilty to all charges and specifications. However, a motion for a finding of not guilty as to conspiracy to commit assault was granted during the trial, and the court-martial found the accused not guilty of three specifications of larceny and the three allied counts alleging wrongful sale. Thus, accused was convicted of one specification each of theft and sale of military property valued at some $8,900.00, the aggravated assault, and conspiracy to steal.

The court sentenced him to be separated from the service with a dishonorable discharge, to forfeit all pay and allowances, to be confined at hard labor

134

for eight years, and to be reduced to the grade of private. The convening authority reduced the period of incarceration to five years, but otherwise approved the sentence adjudged, and thereafter a board of review in the office of The Judge Advocate General of the Navy affirmed the findings and the sentence, except that it further reduced the term of imprisonment to two and one-half years.

Upon accused's petition to this Court for grant of review, pursuant to Article 67(b)(3), Uniform Code of Military Justice, 10 USC § 867, we elected to consider arguments on the following two assignments of error:

"(1) The accused was prejudiced by the pretrial participation, in the role of investigating officer, of the trial counsel of his court-martial.

"(2) The accused was materially prejudiced by the failure to have a fair and impartial pretrial investigation."

The issues granted are closely related and will be treated together.

The pertinent facts are fairly simple. They show that the offenses of which accused stands convicted stemmed from a black-market type operation in Okinawa involving numerous individuals, both indigenous and military personnel. When these misdeeds came to light, an investigation in accordance with Article 32, Uniform Code of Military Justice, 10 USC § 832, was ordered into the charges preferred against the accused and six other marines. Captain William K. Kramer, United States Marine Corps, was appointed investigating officer and, upon inquiry, he ascertained that six of the seven parties to the investigation desired to be represented by counsel.

In addition to qualified counsel representing each accused, there appeared at the pretrial investigation First Lieutenant Peter L. Garrett, United States Marine Corps Reserve, a qualified lawyer certified in accordance with Article 27(b) of the Uniform Code, 10 USC § 827, whose primary duty was as trial counsel for general courts-martial in the Third Marine Division. Captain Kramer, because of the number of parties to the investigation, each represented by counsel, had requested assistance from the Division Legal Officer. No such request, we note, was made of or by the commander who ordered the investigation or the commanding general who convened the instant court-martial.

The Division Legal Officer made Lieutenant Garrett available as legal adviser to the investigating officer pursuant to the latter's request. Garrett was informed by the Division Legal Officer that his duties were "upon the request of the investigating officer . . . to assist the appointed investigating officer in such way as he could at the pretrial." Further, the lieutenant "was to be present for any procedures or technical points that he might advise the pretrial investigating officer and the pretrial."

At the Article 32 hearing, objection was made by counsel for the various accused to the presence of Lieutenant Garrett as legal adviser for the investigating officer, as he would quite probably serve as trial counsel in the cases of some of the accused in the event of trial. Garrett, however, continued in the pretrial investigation, and upon its completion Captain Kramer submitted his report with a recommendation for trial by general court-martial.

In due course such disposition was ordered, and at trial Lieutenant Garrett prosecuted the case for the Government as trial counsel. Prior to the time accused entered his pleas, the defense moved for dismissal of all charges and specifications or, in the alternative, for appropriate relief. The motion was predicated on the ground, *inter alia*, "that the Article 32 Investigation that was held is not in accordance with the law and that the Article 32 Investigation was not an impartial investigation, nor was it free from legal defects." The participation of the trial counsel as legal adviser for the investigating officer was again assailed and was one of the factors upon which the motion was based.

Before ruling thereon, the law officer held an out-of-court hearing. Thereat,

evidence was offered in connection with the motion, including the testimony of Captain Kramer. The latter related that his previous experience in legal matters extended to an assignment as legal officer for a Marine service battalion for twenty months, during which period he had attended the Naval Justice School for seven weeks. He had also handled one previous Article 32 investigation in Okinawa. He affirmed that he was the appointed investigating officer for the Article 32 hearing conducted into the charges alleged against accused and others. Questions put to Captain Kramer elicited the following testimony:

"Q. Captain, I now show you defesne [sic] Exhibit 'B' and I call your attention to the Investigating Officer's Report, for [sic] DD 457 and ask you if the recommendation for trial therein shown is your recommendation.

"A. The block 16, I assume here, is that correct?

"Q. That's correct.

"A. Yes, that's my recommendation.

"Q. Does that recommendation reflect your independent thinking?

"A. Yes, it does.

"Q. Do you recall my presence as counsel to the investigating officer?

"A. Yes, I do.

"Q. Did you, in fact, request my presence?

"A. Yes, I did.

"Q. For what reason?

"A. I requested your presence, actually I talked to Major CUMMINGS relating to the propriety of having a lawyer present during the pretrial to answer any particular questions that may arise on legal matters. He said it was permissable [sic] and I said well is there any possibility of ha ing [sic] one and he said yes, Lieutenant GARRETT will be available if you wish at which time I said fine.

"Q. Was there any time during the Article 32 Investigation any question in your mind as to whether the final authority for making decisions rested with yourself?

"A. No. I believe that question came up a number of times and was asked by one or anlther [sic] of the defense counsel present as to whose responsibility it was for making decisions. At that time I stated it was clearly set forth in the Manual that it was mine."

At the conclusion of the evidence offered in support of the motion, and argument thereon, the law officer denied the same.

It is contended by the defense that the participation of Lieutenant Garrett in the pretrial investigation constituted him, in fact, an "investigating officer" and, therefore, disqualified him from later acting as trial counsel under the provisions of Article 27(a) of the Code, supra, and paragraph 64, Manual for Courts-Martial, United States, 1951. In support of this argument appellate defense counsel, in their brief, quote portions of the record of the Article 32 hearing to indicate the nature and extent of the participation therein by Lieutenant Garrett. It is urged that, when the pretrial investigation is considered as a whole, it appears the activities of Lieutenant Garrett were more than those of a legal adviser to the investigating officer. So the defense argues, he made himself a direct participant and, by his attitude, forced the impartial inquiry to be a proceeding adversary in nature, which the investigating officer was unable or unwilling to halt. Further, it is asserted that Garrett's actions far exceeded the scope of his instructions on the limited purpose for which he was made available; and that he was a most effective participant in the pretrial investigation and, in fact, made decisions and rulings and participated in the direct and cross-examination of witnesses. In sum, the defense contends his assumption of authority resulted in his being elevated to the status of an associate investigating officer.

The Article 32 hearing, it must be remembered, was conducted jointly as to this accused and six other marines.

136

There were four charges, containing eleven specifications, involving this accused and a large number as to each of the other men, each represented by counsel. The transcript of the hearing —only a portion of which is verbatim, the remainder being summarized—covers 144 single-spaced typewritten pages, and the record of the pretrial investigation indicates it was technical and complicated in nature.

These factors, together with the number of accused and the number of counsel representing them, account in large measure for the confusion and, at times, evident lack of decorum depicted by this pretrial record. However, complexity of subject matter and multiplication of participants need not becloud the issues raised herein. In view of the assignment of errors, noted above, this Court must determine whether the accused was afforded a fair and impartial pretrial investigation, as contemplated by Article 32, Uniform Code of Military Justice; and whether the participation by Lieutenant Garrett in that hearing disqualified him from appearing as trial counsel at accused's court-martial.

Inasmuch as a proper understanding of the nature and purpose of the pretrial investigation within the framework of the Uniform Code is necessary prior to any discussion thereof, it may be well to inquire briefly into the origin of this portion of the Code.

Aware of the deficiencies of the administration of military justice disclosed during World War II, the Congress undertook a revision of the laws controlling the same. It proceeded first to revise the Articles of War, which was accomplished by the passage of the Elston Act, approved June 24, 1948. 62 Stat 627. Congress next proceeded to "unify, consolidate, revise, and codify the Articles of War, the Articles for the Government of the Navy, and the disciplinary laws of the Coast Guard." This was accomplished by the passage of the Uniform Code of Military Justice by the Act of May 5, 1950. 64 Stat 107.

There can be no question but that it was the intention of Congress in both the Elston Act and the Uniform Code to eliminate a number of abuses alleged to have previously existed. Among others was the allegation that the command which had originated the charges exercised control over the disposition of the case. It was also alleged that baseless charges were frequently referred to trial, with a resulting record of court-martial against the serviceman which could have been eliminated by a thorough and impartial pretrial investigation.

Inasmuch as the Uniform Code of Military Justice is somewhat akin to the Articles of War, more so than to the Articles for the Government of the Navy, it is helpful and illuminating to trace the development of the present statute dealing with the problem before us from the former Army Articles.

Prior to the Elston Act, the second paragraph of Article of War 70, 41 Stat 802, as amended by the Act of August 20, 1937, 50 Stat 724, provided as follows:

"No charge will be referred to a general court martial for trial until after a thorough and impartial investigation thereof shall have been made. This investigation will include inquiries as to the truth of the matter set forth in said charges, form of charges, and what disposition of the case should be made in the interest of justice and discipline. At such investigation full opportunity shall be given to the accused to cross-examine witnesses against him if they are available and to present anything he may desire in his own behalf either in defense or mitigation, and the investigating officer shall examine available witnesses requested by the accused. If the charges are forwarded after such investigation, they shall be accompanied by a statement of the substance of the testimony taken on both sides."

Article of War 11, 41 Stat 789, of those same Articles, read:

"For each general or special court-martial the authority appointing the court shall appoint a trial judge advocate and a defense counsel and for

**137**

each general court-martial one or more assistant trial judge advocates and one or more assistant defense counsel when necessary: *Provided, however,* That no officer who has acted as member, trial judge advocate, assistant trial judge advocate, defense counsel, or assistant defense counsel in any case shall subsequently act as staff judge advocate to the reviewing or confirming authority upon the same case."

Then came the first of the post-World War II revisions, and, under the Elston Act, Article of War 46(b), 62 Stat 633, re-enacted all of the second paragraph of former Article of War 70, supra, and strengthened it immeasurably by incorporating therein the right of the accused to counsel at the pretrial investigation. This is the added language:

". . . The accused shall be permitted, upon his request, to be represented at such investigation by counsel of his own selection, civil counsel if he so provides, or military if such counsel be reasonably available, otherwise by counsel appointed by the officer exercising general courts martial jurisdiction over the command."

Article of War 11 of the Elston Act, 62 Stat 629, provided for the appointment of the trial judge advocate and defense counsel, as had its predecessor of the same number, but also prescribed additional qualifications. For the first time, disqualification of the investigating officer from subsequent participation in the same case was spelled out, as indicated by the fourth and fifth provisos quoted from that statute:

". . . *Provided further,* That no person who has acted as member, trial judge advocate, assistant trial judge advocate or investigating officer in any case shall subsequently act in the same case as defense counsel or assistant defense counsel unless expressly requested by the accused: *Provided further,* That no person who has acted as member, defense counsel, assistant defense counsel, or investigating officer in any case shall subsequently act in the same case

as a member of the prosecution. . . ."

Our present Article 32, supra, came into being upon enactment of the Uniform Code of Military Justice in 1950. In subsections (a) and (b) thereof, we note, the provisions of Article of War 46(b) of the Elston Act, supra, were substantially re-enacted. And the last-mentioned statute was, as we have seen, in turn a verbatim re-enactment of the second paragraph of its precursor, Article of War 70, supra, with the addition of provision for the accused's right to counsel at the pretrial investigation.

Article 27(a), Uniform Code of Military Justice, supra, re-enacted the substance of the fourth and fifth provisions of Article of War 11 under the Elston Act, but re-arranged the language so that the same now reads as follows:

"For each general and special court-martial the authority convening the court shall detail trial counsel and defense counsel, and such assistants as he considers appropriate. No person who has acted as investigating officer, law officer, or court member in any case may act later as trial counsel, assistant trial counsel, or, *unless expressly requested by the accused,* as defense counsel or assistant defense counsel in the same case. No person who has acted for the prosecution may act later in the same case for the defense, nor may any person who has acted for the defense act later in the same case for the prosecution." [Emphasis supplied.]

Congress was alert to the possibility of command disqualifying the one desired by the accused as his defense counsel by his appointment as investigating officer. This possibility was eliminated by making him available if specifically requested by the accused. But, at the same time, Congress made positive, in enacting the Uniform Code, that the pretrial investigation be impartial by disqualifying the investigating officer from thereafter participating as a member of the prosecution or as trial counsel.

In United States v Samuels, 10 USCMA 206, 212, 27 CMR 280, Judge Ferguson accurately stated the nature and purpose of Article 32:

"It is apparent that the Article serves a twofold purpose. It operates as a discovery proceeding for the accused and stands as a bulwark against baseless charges. See Manual for Courts-Martial, United States, 1951, paragraph 34, page 45. It is judicial in nature. United States v Nichols, 8 USCMA 119, 23 CMR 343; cf. Wood v United States, 128 F 2d 265 (CA DC Cir) (1942); United States v Zerbst, 111 F Supp 807 (ED SC) (1953). But it is *ex parte* in that the Government is not formally represented as a party. Article 32, Uniform Code of Military Justice, and paragraph 34, Manual for Courts-Martial . . .; see Feld, Manual of Courts-Martial Practice and Appeal, § 23, page 40 (1957). It is also a preliminary proceeding, not a trial on the merits."

It should be noted at this point that while the Code does not authorize the trial counsel to be present, it does not specifically prohibit his presence. As the late Judge Brosman observed in United States v Stringer, 4 USCMA 494, 16 CMR 68, the question of disqualification of trial counsel has arisen against a variety of factual backgrounds. It appears as if confusion has existed as to the positive statutory disqualification of the investigating officer imposed by Article 27(a), Uniform Code of Military Justice, supra, and disqualifications arising in civilian and military prosecutions, by conflicts of interest or incompatible representation in the same or other cases. In the latter instance such conflicts are resolved by adherence to the Canons of Ethics, while in the former there is the interdiction of specific statutory provision. Throughout, it remains clear that the investigating officer is the one disqualified by Article 27(a), Uniform Code of Military Justice.

Congress resorted to the most effective device available to it to remove the prosecution from decision of the question as to whether the investigating officer should recommend the reference of the case to trial by general court-martial. But the impartiality of the hearing is not threatened nor is the purpose of the investigation in anywise perverted by the presence of an adviser to the investigating officer or even a member of the prosecution, so long as the latter do not displace or encroach on the province of the duly appointed Article 32 investigating officer. When the last-mentioned functionary properly performs his duties, it is difficult to perceive in what fashion an accused suffers any prejudice by reason of the presence, at the hearing, of a Government lawyer. Congress commanded impartiality and accorded an accused certain advantages but, having assured those ends, that Body surely had no intent unduly to overweigh the pans of the scale on accused's side when no purpose is served thereby. Also, it should be remembered that the investigation is in the nature of a preliminary hearing and, as with all judicial proceedings, its quest is truth. Methods which promote that end may not—when they do not interfere with the impartial scheme Congress has decreed for pretrial investigations—be seized upon by an accused to attack his conviction.

While this Court has not always so stated in unequivocal terms, the following cases indicate that the above is the consistent result, and demonstrate that the position of Lieutenant Garrett as legal adviser at the Article 32 pretrial investigation did not disqualify him from later serving as trial counsel.

In United States v Schreiber, 5 USCMA 602, 608, 18 CMR 226, Chief Judge Quinn concluded:

". . . The mandatory nature of this provision [Article 27(a)] cannot be minimized. However, it is equally clear that one who has an official function to perform requiring him to ascertain the nature of the evidence which he is, or will be, required to present to a court-martial, does not fall within the proscription of Article 27(a)."

A staff judge advocate was held not disqualified to review the record of trial because of his action in consulting with

and advising officers investigating defalcations by the accused, in United States v DeAngelis, 3 USCMA 298, 305, 12 CMR 54. That case, it may be noted, involved a problem similar to the one presently before us, and in that instance the Chief Judge stated:

". . . Because of his position and the knowledge of law he possesses, all members of the armed forces consult him when violations of the Articles of War, or the Uniform Code of Military Justice occur. Especially is this true when a crime of unusual magnitude or one involving serious implications is under investigation. It is obvious that the use of his services minimizes the risk of error arising from faulty pretrial investigations, and appreciably reduces the preference of ill-founded charges against those subject to military law."

United States v Hayes, 7 USCMA 477, 479, 22 CMR 267, also provides guidance. There, an effort was made to disqualify the trial counsel under Article 27(a) because he was also the staff judge advocate and as such had advised the investigating officer. In overruling that contention, Chief Judge Quinn said:

"The second aspect of the accused's claim is that the trial counsel was disqualified from acting by the very fact of his position as legal advisor. No provision of the Uniform Code directly relates to this problem. Article 27(a), 10 USC § 827, prohibits appointment of a person as trial counsel if he has acted as 'investigating officer, law officer, or court member in any case,' or has previously acted 'in the same case' for the defense. See United States v Stringer, 4 USCMA 494, 16 CMR 68. None of these conditions existed in this case, but there is an intimation that Major Kuehl while acting as staff judge advocate advised the investigating officer in connection with the Article 32, 10 USC § 832, investigation. If such legal advice was given, it alone would not constitute the staff judge advocate an investigating officer."

Judge Ferguson joined in the foregoing holding and Judge Latimer concurred in a separate opinion which in nowise weakens, and is perhaps stronger than the above language. The *Hayes* case is remarkably similar to the case before us. Cf. United States v Cunningham, 12 USCMA 402, 30 CMR 402.

Lieutenant Garrett, as legal adviser to the Article 32 investigating officer, is not within the express prohibitions of Article 27(a) and, as was said in United States v Erb, 12 USCMA 524, 532, 31 CMR 110, where an analogous situation was considered:

". . . He [trial counsel who was also Chief of Military Justice] did not fall, therefore, within the express prohibition of Article 6. His eligibility to serve in the two capacities must be judged by the test of incompatability between his functions as trial counsel and his actions as chief of military justice."

See also: United States v Whitacre, 12 USCMA 345, 30 CMR 345; United States v Patrick, 8 USCMA 212, 24 CMR 22.

We have examined the record of the lengthy pretrial hearing with care. It is evident therefrom that Captain Kramer, the duly designated investigating officer, conducted the proceeding. It does not appear therefrom, as claimed by accused, that the Captain abdicated his position to Lieutenant Garrett, nor does it appear as if the latter in anywise superseded Kramer in the discharge of his duties nor did he become an associate investigating officer. On the contrary, during the pretrial investigation Captain Kramer expressly stated he understood his duties and responsibilities, and gave affirmative evidence he was accepting and discharging the same. The investigating officer's report is executed by Kramer and nothing therein nor anything in the record indicates either that he was not qualified or that he failed to discharge his obligation. Cf. United States v Cunningham, supra. Indeed, from the facts developed at the pretrial hearing, it is apparent that no other action short of a recommendation

of reference for trial by general court-martial would have been justified. Failure by the investigating officer to take that action would have been a gross disregard of duty.

In addition, Captain Kramer testified in the out-of-court hearing at the trial of this case and a portion of his testimony is hereinbefore quoted. It appears therefrom, in addition to the pretrial hearing and report, that the Captain was duly appointed as investigating officer, was not disqualified, held the hearing, made his own decision as to proper disposition, and forwarded his recommendation.

From the foregoing, it is apparent that we find nothing in this record to sustain the alleged disqualification of Lieutenant Garrett to serve as trial counsel. By his participation at the pretrial level, he did not become an investigating officer and hence was not disqualified. Further, the pretrial investigation conducted by Captain Kramer was fair and impartial.

Accordingly, both assignments of error must be resolved adversely to accused, and the decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

Today, my brothers uphold—indeed, endorse—the practice of having the trial counsel in a general court-martial serve as the legal advisor to the pretrial investigating officer during the preliminary inquiry into the circumstances of a case which, admittedly, he knows he will eventually try. How this will promote a search for the truth and impartial recommendations as to the disposition of the case, I am not able to understand.

When the committing magistrate and the prosecutor occupy the relationship of attorney and client, it is clear to me the Government receives an undue advantage. Advocacy of a desired result is artfully framed as advice and the entire matter is cloaked by our traditional privilege. In short, the situation which the Court here approves is precisely the same as if, in civilian life, the United States Commissioner at a preliminary hearing permitted the United States District Attorney to function in the role of his assistant rather than as an advocate for the United States. The decision is regrettable, for it means the end of the investigation conducted under Uniform Code of Military Justice, Article 32, 10 USC § 832, as the impartial device designed by Congress to discover the evidence against the accused and to screen out baseless charges.

One could not object to the appearance of counsel for the United States at the preliminary hearing conducted by the investigating officer in his proper role as the potential prosecutor. There, he stands revealed as an officer interested in establishing the validity of the charges and in developing the case. His functioning as the Government's representative *vis a vis* counsel for the accused will undoubtedly assist our "magistrate" in executing his task. Proceedings are then carried on in the open, and the investigating officer is able to allow due weight to be given to the partisan advocacy of either side. But when the prosecutor's identity is clothed with appointment as the investigating officer's own attorney, he is placed in a position in which his recommendations and advice will surely be accorded unfair attention. That such represents a complete departure from our prior holdings in this area is demonstrated by reference to those authorities to which my brothers have not accorded a due amount of consideration.

Code, supra, Article 27, 10 USC § 827, provides pertinently:

"(a) For each general and special court-martial the authority convening the court shall detail trial counsel and defense counsel, and such assistants as he considers appropriate. *No person who has acted as investigating officer, law officer, or court member in any case may act later as trial counsel, assistant trial counsel, or, unless expressly requested by the accused, as defense counsel or assistant defense counsel*

*in the same case."* [Emphasis supplied.]

In discussing the foregoing statutory disqualification, the Manual for Courts-Martial, United States, 1951, states, in paragraph 64:

"Within the meaning of the fifth clause of 62*f* and Articles 25*d*(2), 26*a*, and 27*a*, the term 'investigating officer,' as applied to a particular offense, shall be understood to include a person who, under the provisions of 34 and Article 32, has investigated that offense or a closely related offense alleged to have been committed by the accused. The term also includes *any other person who, as counsel for, or a member of, a court of inquiry, or as an investigating officer or otherwise, has conducted a personal investigation of a general matter involving the particular offense;* however, it does not include a person who, in the performance of his duties as counsel, has conducted an investigation of a particular offense or a closely related offense with a view to prosecuting or defending it before a court-martial. But see 6*a* and 62*f*(6)." [Emphasis supplied.]

In United States v Bound, 1 USCMA 224, 2 CMR 130, this Court alluded to the possibility that Congress intended by the provisions of Code, supra, Article 27, and Code, supra, Article 25, 10 USC § 825, to prohibit only the appointment of the actual investigating officer as, respectively, counsel or a member of the court in the same case. We nevertheless unanimously rejected this contention and, considering the Manual paragraph quoted above, expressly adopted its language as indicative of the proper scope of the statute's disqualification. Thus, we pointed out, at page 227:

". . . Analysis of this paragraph [of the Manual] suggests that the following persons shall be deemed to be included within the phrase's meaning:

(1) One who has investigated the offense in question or a related offense under the provisions of Article 32.

(2) *One who has served as a member of or as counsel for a court of inquiry and as such has conducted a personal investigation of a general matter involving the offense in question.*

(3) One who as 'investigating officer'—acting other than under Arcle 32 apparently—has conducted a personal investigation of a general matter involving the offense in question.

(4) One who has 'otherwise' conducted such a personal investigation." [Emphasis supplied.]

See also United States v Lee, 1 USCMA 212, 2 CMR 118.

From the foregoing, it will be seen that we have consistently indicated that counsel for a court of inquiry is disqualified subsequently to participate in a trial by court-martial growing out of its prior investigation. United States v Bound, supra; United States v Lee, supra. While the Manual reference adopted by the Court does not expressly mention counsel for the pretrial investigating officer—I daresay because it was not contemplated that such a representative would be appointed for a judicial officer—it is clear that his function is precisely the same as that of such a court. Indeed, the definition of a court of inquiry encompasses precisely the duties presently assigned the investigating officer under the Code, *i.e.,* "to ascertain whether it be proper to resort to extreme measures against a person charged before a court-martial . . . a court constituted by authority of the articles of war, invested with the power to examine into the nature of any transaction of, or accusation or imputation against, any officer or soldier, when demanded by him." Black's Law Dictionary, 4th ed, page 431; Davis, *A Treatise on the Military Law of the United States,* 1913, page 218. Indeed, if an additional step had been taken by the principal opinion in tracing the legislative background of pretrial investigations, it would have been found that the use of a single officer under Article of War 70, 41 Stat 802, superseded the former resort to a court of inquiry. Revised Statutes § 1342,

arts. 115, 116; Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, page 522, et seq.

It is conceded by my brothers that Lieutenant Garrett, the appointed assistant trial counsel and actual trial counsel in this case, was appointed as counsel to the pretrial investigating officer, served as such, advised that officer with respect to rulings and legal matters, and generally participated actively. Thus, in fact as well as in law, he served precisely the same function as counsel for a court of inquiry, and I can perceive no basis for distinguishing between the two roles for purpose of disqualification. United States v Bound, supra; United States v Lee, supra. As pointed out above, the investigating officer is simply a statutory substitute for the undoubtedly cumbersome multimembered court of inquiry and if, as is stated by my brothers, the Congressional purpose in providing for his examination of the charges was an impartial inquiry into the truth of the allegations, I fail to see how, consistently with that legislative intent, we may properly hold that trial counsel is permitted also to act in the earlier role of his confidential legal advisor.

And that we must so extend the prohibition against the investigating officer acting as trial counsel is demonstrated by the law's consistent treatment of an attorney and his client as one entity whose interests are so intertwined and whose relationship is so confidential that the latter is generally held bound by the former's acts. See, generally, 5 Am Jur, Attorneys at Law, §§ 45, 67, et seq.

Turning to the rationale of the principal opinion, I suggest it supports the position for which I argue rather than the conclusion which it ultimately adopts. Its study of the legislative background of Code, supra, Articles 27 and 32, indicates Congress' intent to establish a method of discovery and to eliminate command interference and baseless charges by providing for an impartial pretrial investigation through prohibiting the investigating officer from thereafter acting as trial counsel or court member in the case. The execution of that purpose vanishes, however, when we sustain the reverse of the same process whereby the intended trial counsel is permitted to occupy a confidential legal relationship with respect to the investigating officer. When he thus mounts the bench, untold opportunities to develop the evidence in a particular manner, to secure a desired recommendation, and to eliminate the last vestige of impartiality are opened. Nor will these shapings of investigative efforts be easily detectable either by accused, his counsel, or appellate agencies, for they will be framed as legal advices and, after today, within the privilege which masks the attorney-client relationship. And he who argues that a lawyer is unable so to influence a lay magistrate is simply ignoring reality.

In like manner, my study of the holdings upon which my brothers rely does not indicate that limitation of the disqualification to the investigating officer alone "is the consistent result" of our prior cases. At the outset, I call attention to our decisions in United States v Bound, supra, and United States v Lee, supra, both of which adopt a broader view of those covered by the ineligibility provision of Code, supra, Article 27, and neither of which are discussed by my brothers. Passing to United States v Schreiber, 5 USCMA 602, 18 CMR 226, one can find no support for the position that Garrett was not disqualified. There, it was argued that trial counsel came within the prohibition of the statute because he, having been informed that he would prosecute the case, conducted his own personal investigation in order to prepare for trial. As the evidence which he developed was for his own use in performing his duty as trial counsel, he obviously fell outside the bounds of the term "investigating officer." In United States v DeAngelis, 3 USCMA 298, 12 CMR 54, we dealt with delivery of pure legal advice by an impartial staff judge advocate to the investigating officer rather than, as here, an appointed prosecutor who also performed the duty of attorney for the military committing magistrate. To the same effect is United States v Hayes, 7 USCMA 477,

**143**

22 CMR 267, where the staff judge advocate to the special court-martial convening authority subsequently acted as trial counsel at the general court-martial level. And, in United States v Erb, 12 USCMA 524, 31 CMR 110, the two positions involved were Chief, Military Justice, and trial counsel. As the former assignment is in every respect similar to that of a chief prosecutor, it is difficult to perceive how it may be considered as authority for the position that the legal advisor to the investigating officer is not within the provisions of Code, supra, Article 27(a).

Moreover, unlike each of the foregoing cases, the record before us does not depict the mere giving to the investigating officer of abstract legal advice. Rather, the verbatim transcript clearly establishes that Lieutenant Garrett actively participated in performing the functions of the investigating officer himself. Thus, he ruled on counsel's objections, made statements with references to the matters brought out, and, as one of the defense counsel testified, acted in every way as if he were a law officer presiding in an adversary proceeding. Cf. United States v Berry, 1 USCMA 235, 2 CMR 141. I suggest that such participation is a far cry from the relatively innocuous picture painted by my associates.

In sum, then, I am of the view that we should adhere to the precedents which we established in United States v Bound and United States v Lee, both supra. Were we to do so, it is clear that the trial counsel's participation as attorney to the investigating officer would fall within the statutory disqualification set forth in Code, supra, Article 27. In short, he should be treated precisely the same as counsel for a court of inquiry. When we do not so treat him, we permit the prosecutor to sit on the bench with the pretrial investigating officer and open the door for the ultimate elimination of the impartial pretrial screening of charges and discovery of evidence which the Congress envisioned.

I would reverse the decision of the board of review and order a new pretrial investigation and trial.