UNITED STATES, Appellee

v

KENNETH L. WILLIS, Private, U. S. Army, Appellant

22 USCMA 112, 46 CMR 112

No. 25,766

January 26, 1973

*Captain Stephen I. Hurwitz* argued the cause for Appellant, Accused. With him on the brief were *Colonel Arnold I. Melnick* and *Captain Mark L. Tuft.*

*Lieutenant Colonel Ronald M. Holdaway* argued the cause for Appellee, United States. With him on the brief were *Captain Richard L. Menson, Captain Stan L. Spangler, Captain Benjamin P. Fishburne, III,* and *Captain M. Douglas Deitchler.*

## Opinion of the Court

QUINN, Judge:

Article 27, Uniform Code of Military Justice, 10 USC § 827, provides in part that no person "who has acted for the prosecution may act later in the same case for the defense." On this appeal, the accused contends that this prohibition against inconsistent representation was violated, notwithstanding appointed defense counsel's averment at trial that he had not "so acted."

Captain J. F. Motley was the appoint-

ed trial defense counsel. His first appearance for the accused, however, occurred about a month earlier. The accused had requested counsel for the Article 32 investigation, and Captain Motley was designated to represent him. With the accused, he attended the hearing before the Article 32 investigating officer. It further appears that, before trial, Captain Motley "participated" as defense counsel in the preparation of an "Offer to Plead Guilty" in which the accused stated that the offer had "originated" with him and that "no person" had attempted to "coerce" him into "making this offer or to plead guilty."

Without impugning the integrity of the Offer to Plead Guilty, which had been accepted by the convening authority and which was complied with by entry of a formal plea of guilty to all of the charges but one, that having been dismissed on defense counsel's objection that it was a minor charge improperly joined with major offenses, and without any complaint that Captain Motley's efforts in regard to the sentence were less productive than could reasonably be expected from other counsel, the accused maintains that his conviction must be reversed because Captain Motley was ineligible to act as defense counsel. The contention is based upon a discussion that Captain Motley had with CID agents investigating the offenses on the day they were committed. We are not informed of the substance of the discussion. The only evidence of it appears in an interim CID report of investigation included as an exhibit in the record of the Article 32 investigation. The report is on a standard form and bears a date one day after the events that led to the charges against the accused. The part of the report material to the issue is as follows:

## COORDINATION

| Intelligence | Date Initial Notification | | Name of Person Receiving Notification | |
|---|---|---|---|---|
| Judge Advocate | Date Case Discussed | 5 Jan 71 | Name of Person Discussed with | Cpt James F. Motley |
| | Date Initial Notification | * * * | Name of Person Receiving Notification | * * * |
| Provost Marshal | Date Completed Report Discussed | | Installation Provost Marshal Approval | |
| Other | | | | |

Government counsel suggest that a criminal investigator is not "part of the prosecution" so that even if Captain Motley was personally identified with the CID investigation, he was only "aiding . . . an *impartial* investigation," and not thereby disqualified from later acting as accused's counsel. The argument is no answer to accused's challenge to Captain Motley's eligibility to serve as defense counsel in the same case. Under the Uniform Code, supra, no person "who has acted as an investigating officer . . . may act later . . . as defense counsel" unless "expressly requested by the accused." Article 27(a), Code, supra, 10 USC § 827. We have held that the term "investigating officer" is not limited to an Article 32 investigating officer but includes those who engage in police-type investigations. United States v Bound, 1 USCMA 224, 2 CMR 130 (1952). See also United States v DeAngelis, 3 USCMA 298, 12 CMR 54 (1953). Consequently, the basic question is still whether Captain Motley's action in connection with the pretrial investigation disqualified him from later serving in another capacity in the case.

The CID report leaves no doubt that the discussion with Captain Motley was held with him because he was a member of the Judge Advocate's office.

According to the accused, the very fact of communication demonstrates "substantive prosecution participation." That conception of the duties and responsibilities of the staff legal officer is incorrect. The variety and range of his functions have no parallel in the civilian community. Compare United States v DeAngelis, supra at 305, 12 CMR at 61, and United States v Gunnels, 8 USCMA 130, 134, 23 CMR 354, 358 (1957) with Coolidge v New Hampshire, 403 US 443, 29 L Ed 2d 564, 91 S Ct 2022 (1971). See also United States v́ Hurt, 9 USCMA 735, 752–755, 27 CMR 3, 20–23 (1958).

■Whatever one may think of the wisdom of multiple investiture, military law constitutes the staff legal officer the adviser to the convening authority in regard to his court-martial functions, and the adviser to others involved in a court-martial in regard to their respective rights and obligations. Thus, the staff legal officer can supply general advice to trial counsel as to the proof required to establish the charges against an accused, without having such advice transform him into a prosecutor so as to make him ineligible thereafter to advise the convening authority as required by Article 61 of the Uniform Code, supra, 10 USC § 861. United States v Judd, 11 USCMA 164, 28 CMR 388 (1960). In the DeAngelis case we held that the giving of advice to investigators inquiring into offenses attributed to the accused did not make the staff legal officer an investigator, and did not, therefore, disqualify him from advising the convening authority. In United States v Young, 13 USCMA 134, 32 CMR 134 (1962), we held that appointment as trial counsel of a staff legal officer who, as such, had previously advised investigating agents, did not violate the prohibition of Article 27 against appointment as trial counsel of one "who has acted as investigating officer." In the Gunnels case we held that the staff legal officer could properly advise even the accused as to his legal rights, without thereby making himself a part of the defense. Of course, a staff legal officer may become

114

so deeply and personally involved as to move from the role of adviser to the role of participant. Once he acts in that capacity, he is disqualified from later performing any inconsistent function. See United States v Albright, 9 USCMA 628, 26 CMR 408 (1958); United States v Dodge, 13 USCMA 525, 33 CMR 57 (1963).

■ Tested by the breadth of responsibility of the staff legal officer and his assistants, as defined in the cited cases, the notation on the CID report of a discussion between the agents and Captain Motley, on the day of the commission of the offenses, is not indicative of Captain Motley's personal involvement with the investigation or the prosecution, as the accused contends, but rather reflects only an advisory consultation. The notation is, therefore, entirely consistent with Captain Motley's statement at trial that he had not previously acted in the case in any capacity that disqualified him from acting as defense counsel. As far as the record is concerned, Captain Motley was not ineligible to act as defense counsel for the accused, either in the preparation of his offer to plead guilty, òr at the trial.

■ In a second assignment of error, the accused alleges that he was prejudiced by inordinate delay in the convening authority's review of his conviction. He has not particularized any disadvantage to him resulting from the delay, and we perceive no such disadvantage from anything in the record before us. There is, therefore, no good cause to reverse his conviction because of the delay. United States v Wheeler, 21 USCMA 468, 45 CMR 242 (1972); United States v Mohr, 21 USCMA 360, 363, 45 CMR 134 (1972).

The decision of the Court of Military Review is affirmed.

Chief Judge DARDEN concurs.

DUNCAN, Judge (concurring in part and dissenting in part):

In this case we are called upon to decide whether the defense counsel was statutorily disqualified from rep-

resenting the appellant at trial. Article 27, Uniform Code of Military Justice, 10 USC § 827, in pertinent part, mandates that "[n]o person who has acted for the prosecution may act later in the same case for the defense." A problem is raised here because even though the defense counsel at trial stated, "I have acted only in the defense capacity in this case," his name appears in the allied papers as the "judge advocate" with whom the case was "discussed" by the Army criminal investigators on "5 Jan 1971," the date of the events in question. The nature of that discussion is nowhere related. No mention was made of this discussion at the Article 39(a) session, which appears to have proceeded according to the Guide—Trial Procedure in Appendix 8, Manual for Courts-Martial, United States, 1969 (Revised edition).

It is impossible for this Court to speculate about the subject of the discussion between Captain Motley and the criminal investigators. The range of possibilities extends from merely having advised a judge advocate that the incident had occurred to having requested and received legal advice on proceeding against the suspect. Nevertheless, unless the nature of such a discussion is made known to us, we are unable to determine whether it constituted action for the prosecution on the part of the defense counsel in the sense of Article 27 of the Code. However, I do feel that the popular view is that when military police officers, during the course of their investigation, discuss that investigation[1] with a member of the office from which the prosecution will be selected, the discussion is for the purpose of seeking advice relative to the merits of possible or probable prosecution. I believe that such advice, if given, constitutes action on behalf of the prosecution. Unfortunately, the facts of this case tend to give the appearance that this is what happened; and, I believe that Article 27(a), Code, supra, was enacted so that records of military proceedings will clearly show that there has been no impropriety and eliminate any appearance of impropriety.

In any event, in keeping with the intent of that statute, the determination whether such action for the prosecution has occurred is not for the trial defense counsel to make, especially when the only disclaimer of record appears in the preliminary boilerplate at the initial Article 39(a) session. What might not have appeared to the defense counsel to be action for the prosecution might appear very differently to the accused, the military judge, or an appellate court. The record is silent whether the accused was advised of the defense counsel's discussion with the criminal investigators, as required by paragraph 48c, Manual, supra, which provides in part that it is the duty of defense counsel

". . . to disclose to the accused any interest he may have in connection with the case, any ground of possible disqualification, and any other matter which might influence the accused in the selection of counsel."

Moreover, I construe paragraph 61f(4), Manual, supra, to require a defense counsel to respond affirmatively to trial counsel's *question* as to whether he has "acted in the same case as a member of the prosecution" by reciting *any action* he may have taken on behalf of the prosecution, thereby imposing upon the military judge the duty to excuse the defense counsel forthwith "[i]f it appears that . . . [he] has previously acted in the same case for the prosecution." Thereafter, if it ap-

---

[1] The Military Police Progress Report reflects that at the time of the discussion with Captain Motley the investigators were aware that the appellant had reportedly thrown a chair at Captain Tureck, his commanding officer, striking him about the head and shoulders; pointed a loaded rifle, which subsequently discharged four rounds into the ceiling of the mess hall, at Lieutenant Miles; and, departed the unit area and was then in an absence without leave status.

pears, as it does here, that the defense counsel was involved in any manner with the Government's prosecution of the case and if such action had not been made part of the record at trial, I cannot indulge in presuming he did not act for the prosecution in accordance with his conclusive statement at trial, but rather would require that the matter be inquired into at a rehearing limited to the question of the disqualifition of the defense counsel. Cf. United States v DuBay, 17 USCMA 147, 37 CMR 411 (1967). If the defense counsel had in fact acted for the prosecution within the meaning of Article 27, Code, supra, a matter on which I express no opinion, then the mandatory disqualification required by the Code supersedes the inclination to accept even the stock averments of counsel at face value. This case differs from both United States v Williams, 21 USCMA 459, 45 CMR 233 (1972), and United States v Phillips, 22 USCMA 4, 46 CMR 4 (1972), where we permitted convictions to stand even though both defense counsel had previously appeared on orders as trial counsel. In those cases the potential disqualifications were fully disclosed on the record before the military judge, unlike the situation herein where the possible disqualification was not brought to the attention of the military judge at all.

I am not unsympathetic to military problems arising from the investiture in the office of the staff judge advocate of multiple responsibilities to members of the command. I believe in this instance however that the system of military justice would be better served by a more strict interpretation of what I consider to be a positive command of the Congress.

I agree with the majority in finding no prejudice to the appellant in the convening authority's delay in the review of the conviction.