UNITED STATES

v.

**Major Luis J. CASTLEMAN, 371–42–1715 FV, United States Air Force.**

**ACM 22815.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 9 April 1980.

Decided 8 April 1981.

Appellate Counsel for the Accused: Mr. Floyd D. Holder, Jr., Lubbock, Texas 79041. Colonel Larry G. Stephens, Colonel George R. Stevens and Major Robert G. Gibson, Jr.

Appellate Counsel for the United States: Colonel James P. Porter and Captain Michael J. Hoover.

Before EARLY, KASTL and MILES, Appellate Military Judges.

## DECISION

MILES, Judge:

Finding that the accused was denied his statutory right to a thorough and impartial investigation under Article 32, Uniform Code of Military Justice, we set aside the

findings of guilty and sentence. In order to preclude errors on any retrial, we also comment on several other defense assignments of error.

Contrary to his pleas, the accused was convicted of willful disobedience of a lawful order of his superior commissioned officer and two specifications of dereliction of duty in violation of Articles 90 and 92, Code, *supra*, 10 U.S.C. §§ 890 and 892. The adjudged and approved sentence extends to dismissal.

I

The disobedience offense arose under these facts. On 21 December 1979, the accused was called to his commander's office. There, his commander, Lieutenant Colonel Allen H. Moore, Jr., informed the accused that he was relieved of duty as a flight surgeon and reassigned to the primary care clinic. The accused was told his Air Force Specialty Code (AFSC) had been unilaterally changed. The commander also handed back to the accused an application for medical credentials form[1] submitted some three months previously, told him it was unacceptable and directed it be redone.

Shocked and upset by this information, the accused returned to his office. Approximately 10 minutes later Lieutenant Colonel Phillip J. Pixley, a dentist and chairman of the hospital's medical credentials committee, advised Lieutenant Colonel Moore that the original of the credentials form was needed for committee files as evidence of what hospital privileges the accused had requested. The commander's secretary went to the accused's office but could not obtain the form. Lieutenant Colonels Moore and Pixley searched for the accused and found him in the parking lot. All three officers then went to the accused's office.

At the office, Lieutenant Colonel Moore asked the accused where the credentials form was. The accused responded it was in a safe place. Lieutenant Colonel Moore said he wanted the form returned immediately. The accused replied that he wanted to consult an attorney prior to returning the form. Lieutenant Colonel Moore became upset, and started shouting and leaning over the accused's desk. He ordered the accused to give him the form immediately. The accused responded that he did not want to disobey the direct order but still wanted to consult an attorney.[2] The accused believed that somehow the form was going to be used against him as evidence in a trial by court-martial and wanted to consult an attorney prior to complying with the order.[3]

After the accused refused to comply with the direct order, Lieutenant Colonel Moore ordered the accused to stay in his office. The accused obeyed this order.

Lieutenant Colonel Moore then left and returned to his office. There, he called the base commander and base legal office seeking authorization to search the accused's automobile in order to seize the form. He obtained search authorization but before the security police executed the search, the accused, having consulted counsel, returned the form to Lieutenant Colonel Moore. Nothing about the form was incriminating nor was it sought for the purpose of incriminating the accused.

1. The form was a Briggs Corporation Form 1028, Application for Appointment to the Medical Staff. It was in local use at the hospital for credentials review—essentially a process to determine what hospital privileges a physician will be granted. Air Force Regulation 160–41, Credentials Review of Health Care Providers, 12 January 1978, establishes the applicable requirements and procedures.

2. Interim Message Change 79–2, 23 February 1979, to AFR 160–41, *supra* note 1, specifies the due process rights of medical personnel who feel their "privileges have been unjustifiably restricted or too broadly defined." Both evaluees and the credentials committee are guaranteed the right to consult legal counsel with respect to these matters.

3. At trial, defense counsel requested but was refused an instruction on the affirmative defense of mistake of fact as to the charged disobedience. Without deciding that this was error, as asserted by appellate defense counsel, we believe the military judge should give the accused the benefit of the doubt, on retrial, in light of the regulation, *supra* notes 1 and 2. *See United States v. Crump*, 39 C.M.R. 899 (A.F.B.R.1968).

The other two offenses of which the accused was convicted, derelictions of duty, relate to a neglectful failure to follow certain prescribed medical procedures during the course of two routine annual physical examinations.[4] These offenses were not the basis of Lieutenant Colonel Moore's earlier transfer of the accused to primary medical care. They were only discovered some three weeks after the disobedience incident when the commander screened the medical records of the accused's patients.

## II

After the accused declined to accept nonjudicial punishment for willful disobedience and three derelictions of duty, charges were preferred against the accused by Lieutenant Colonel Moore.[5] Captain Felix J. Stalls, III, an assistant base staff judge advocate, was appointed on 8 February 1980 to conduct an Article 32 investigation into these charges. The investigation began on 16 February 1980 and concluded on 26 February. Discussion in the investigation was very brief, and trial by general court was recommended as to all charges and specifications.

Before the Article 32 investigation began, at the investigation itself and at trial, defense counsel objected to Captain Stall's appointment because he was a close personal friend of Lieutenant Colonel Moore, the accuser and principal witness against the accused.

It is undisputed that Lieutenant Colonel Moore and Captain Stalls, and a third officer, had, as mutual friends, jointly purchased an airplane together shortly before the Article 32 investigation began. In fact, the investigation was apparently delayed because Captain Stalls and Lieutenant Colonel Moore spent two or three days travel-

ling together to pick up the airplane and fly it back to Texas. This trip immediately preceded the convening of the Article 32 investigation. At trial, Captain Stalls admitted an ongoing professional and personal relationship with Lieutenant Colonel Moore that had ripened into friendship because of their common background. Captain Stalls, however, did not believe there was anything in that relationship which would affect his ability to act as an impartial Article 32 investigating officer.

## III

An accused has a right to a "thorough and impartial investigation" of all charges referred to a general court-martial. Article 32(a), Code, *supra*; Manual for Courts-Martial, 1969 (Rev.), paragraph 34. To insure that impartiality, courts have held that an investigating officer who is an accuser or who previously conducted an inquiry into an offense is disqualified as an investigating officer. *United States v. Lopez*, 20 U.S.C.M.A. 76, 42 C.M.R. 268 (1970); *United States v. Cunningham*, 12 U.S.C. M.A. 402, 30 C.M.R. 402 (1961). Investigating officers who have conducted related investigations may also be similarly disqualified under particular facts. *United States v. Natalello*, 10 M.J. 594 (A.F.C.M.R.1980).

In our view, Article 32 investigating officers, whose functions are judicial and quasi-judicial, are held to the same standards as military judges in determining impartiality. *United States v. Collins*, 6 M.J. 256 (C.M.A.1979); *United States v. Cunningham, supra*. Military judges, as well as their predecessors, law officers, may err in not recusing themselves under particular facts. *See United States v. Bradley*, 7 M.J. 332 (C.M.A.1979); *United States v. Jarvis*,

---

4. The accused was acquitted of a third specification of dereliction which was, in any event, clearly multiplicious both as to findings and sentence. Essentially, the offenses of which he was convicted were the failure to perform a visual anal examination as to both patients and a failure to perform in a prescribed manner an eye and stomach examination as to one patient. The accused agreed that he did not perform a

visual anal examination because, in his view, it was degrading to the patient and not medically necessary in the particular circumstances.

5. The accused was also charged, but acquitted, of a failure to repair and not having his haircut exactly in accordance with regulations on one occasion. These offenses were added after the accused declined nonjudicial punishment.

22 U.S.C.M.A. 260, 46 C.M.R. 260 (1973); *United States v. Renton*, 8 U.S.C.M.A. 697, 25 C.M.R. 201 (1958); Manual for Courts-Martial, *supra*, paragraph 62.*f.*

The applicable judicial standard is reflected in the Judicial Canons of Ethics,[6] the American Bar Association Standards for Criminal Justice,[7] and federal statutory law. While these differ slightly in wording, they, in essence, adopt an objective reasonable man standard designed to insure the appearance as well as the fact of impartiality. *SCA Services, Inc. v. Morgan*, 557 F.2d 110 (7th Cir. 1977); Annot., 40 A.L.R. Fed. 954 (1978). For convenience, we will use the federal codal standard: "Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (1979).

■ Applying that standard to this case, we agree with appellate defense counsel that Captain Stalls, the Article 32 investigating officer, was disqualified to act as such. We recognize that Captain Stalls declared that he did not believe anything in his personal and professional relationship with Lieutenant Colonel Moore would interfere with the judgment required of an investigating officer. We do not question the honesty of Captain Stalls. However, the personal belief of the judicial officer is not the governing standard.[8] As was clear at the Article 32 investigation and at trial, Lieutenant Colonel Moore was much more than a nominal accuser, and the alleged bias

of Lieutenant Colonel Moore towards the accused as well as their personal and professional differences were central issues. This created a situation where Captain Stalls' impartiality, because of his relationship to the accuser and principal government witness, could reasonably be questioned. Accordingly, the military judge erred when he denied the accused's motion at trial for a new Article 32 investigation.

## IV

In the staff judge advocate's post-trial review, the reviewer concluded that even if Captain Stalls was not impartial, specific prejudice was required before reversal could be ordered. Having found no specific prejudice, the reviewer recommended affirming the findings and sentence. As appellate government counsel concede, this is an incorrect legal standard.

■ If an accused was improperly denied a substantial pretrial right, *e. g.*, a thorough and impartial pretrial investigation, reversal is required, upon timely complaint, regardless of whether the accused suffered specific prejudice. *United States v. Worden*, 17 U.S.C.M.A. 486, 38 C.M.R. 284 (1968); *United States v. Mickel*, 9 U.S.C.M.A. 324, 26 C.M.R. 104 (1958). In any event, we have reviewed the Article 32 investigation and find several deficiencies there which specifically prejudiced the accused before and during trial. Briefly, these concern a failure to disclose certain

---

6. American Bar Association, the Code of Judicial Conduct (1972), Canon 3C(1) states: "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned. . . . "

7. American Bar Association Standards, The Function of the Trial Judge (1972), Standard 1.7 states:

    The trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case or whenever he believes his impartiality can reasonably be questioned.

    See also AFM 111–1, Military Justice Guide, paragraph 1–11, 2 July 1973, Change 2 (8 October 1976), which notes American Bar Association Standards for Criminal Justice are specifically applicable to courts-martial.

8. In a closely related context, juror disqualification, Justice Black pointed out:

    The test of bias sufficient to exclude a juror for cause is not what the particular juror believes he could do. Long ago Chief Justice Marshall ruled that a person "may declare that he feels no prejudice in the case, and yet the law cautiously incapacitates him from serving on the jury; because it suspects prejudice; because in general, persons in a similar situation would feel prejudice." (Citation omitted).

    *United States v. Dennis*, 339 U.S. 162, 176, 70 S.Ct. 519, 527, 94 L.Ed. 734 (1950). Cf. *United States v. Harris*, 11 M.J. 589 (A.F.C.M.R. 1981).

facts or discuss certain offenses in a meaningful fashion. They were pointed out by accused's defense counsel in depth at trial.

 We also conclude the staff judge advocate's review was defective, as urged by appellate defense counsel in not advising the convening authority that Lieutenant Colonel Moore was relieved as hospital commander and reprimanded two days after the trial concluded. The other assignments of error, not discussed, are rendered moot by our decision.

### V

Accordingly, the findings of guilty and the sentence are set aside. The accused is entitled to a new Article 32 investigation, following which a rehearing may be ordered.

EARLY, Chief Judge, and KASTL, Judge, concur.