UNITED STATES, Petitioner,

v.

**Louis M. LABELLA Commander, JAGC, U. S. Navy Military Judge, Respondent.**

In re Special Courts-Martial.

UNITED STATES

v.

**OT3 Elaine McINTOSH, 541 74 4427, USN.**

UNITED STATES

v.

**OT3 Maureen F. TANGARONE, 072 54 0043, USN.**

Miscellaneous Docket Nos. 82–11 and 82–13.

U. S. Navy-Marine Corps Court of Military Review.

4 Nov. 1982.

LCDR David S. Durbin, JAGC, USNR, Appellate Defense Counsel.

CDR Jay M. Siegel, JAGC, USNR, Appellate Government Counsel.

OPINION OF THE COURT ON PETITION FOR EXTRAORDINARY RELIEF IN THE NATURE OF A WRIT OF MANDAMUS

ABERNATHY, Senior Judge:

We have consolidated these cases for decision since the operative facts and the legal issues arising therefrom are substantially identical. Further, the facts in these cases differ from those in *United States v. Labella,* 14 M.J. 688 (N.M.C.M.R.1982), only in that both of the subject accused were petty officers, and were not in a leave status at the time of the alleged offenses; further, certain of the events in question took place at the home of the accused, McIntosh.

Petitioner seeks the issuance of a writ of mandamus from this Court to compel respondent to reinstate numerous specifications of alleged drug offenses which respondent dismissed below for lack of service-connection, subject matter jurisdiction. After a review of the record and respective briefs, we are convinced that this is a circumstance which justifies the invocation of the extraordinary remedy of mandamus. Accordingly, the petition is granted.

In *Labella, supra,* the legal issues were precisely those presented in the instant cases, namely: did the military judge err in failing to find service-connection, and, if he did, was that error of such magnitude as to amount to an abuse of discretion? As to the former question, we tried, as politely as we knew how, to tell Respondent, both during oral argument and in our written opinion, that he was wrong. Yet, despite our implicit adoption of an expansive interpretation of the decision in *United States v. Trottier,* 9 M.J. 337 (C.M.A.1980), Respondent continues to adhere to his earlier view that much of *Trottier* is *dicta,* and that footnote 28, thereto, is purely illustrative. We suppose that, since we did not invoke mandamus in *Labella, supra,* Respondent would be technically and legalistically correct in asserting that our restrained, though crystal-clear message to him there was also not a part of our *holding* in that case. We trust that our disposition of the cases *sub judice* does not suffer from the same perceived infirmity. As to the latter question, we believe that the instant cases are controlled by the decision in *United States v. Trottier, supra,* as interpreted in *United States v. Labella, supra.* The military judge clearly acted contrary to that decisional law, and, using an objective test, we conclude that he abused his discretion.

In *United States v. Stookey,* 14 M.J. 975 (N.M.C.M.R.1982), we recently held that service-connection was facially established within specifications alleging that the accused used and possessed marijuana "at a party at his off-base residence, a party attended by naval service personnel, some assigned to" appellant's unit.[1] We

believe that the participation, off-base, in a sort of floating-crap-game, drug-centered subculture perpetuated by members (such as the accused in the instant cases) of a military organization falls easily within the scope of *Trottier.* This is so regardless of whether the party was advertised on-base[2] or the member was in a leave or liberty status at the time.

The records of trial are returned to the military judge for action consistent with our decision. In the interest of assuring fair and impartial trials in these cases, we believe that the military judge should give sympathetic consideration to recusing himself from further participation therein. In this regard, attention is invited to *United States v. Castleman,* 11 M.J. 562, 564–565 (A.F.C.M.R.1981) (discussing recusation of military judges where impartiality might reasonably be questioned); ABA Standards, The Function of the Trial Judge, § 1.7 (1972); Rosenberg, *Appellate Review of Trial Court Discretion,* 79 F.R.D. 173 (1975).

Judge KERCHEVAL and Judge BARR concur.

---

1. In so holding, we did not deem it necessary to determine whether the alleged events were part of a pattern of conduct, whether they had their incipiency on-base or off, or whether the participants were in a leave or liberty status.

2. Among his facts, Respondent found that the social events in question were always discussed on-base, and in some cases flyers were distributed on-base referring to them as "keg" or "BYOB" parties. He further found that "No mention of marijuana in connection with the parties was ever made on board ..." asserting that, had there been any discussion of illicit activity on board the reservation, he would have found jurisdiction. We believe this is either a simplistic and unrealistic interpretation of the facts, or one preconceived to obtain the desired result. This is so, on the one hand, because it is preposterous to think that the flyers would have heralded a marijuana party in explicit terms and, on the other, because whatever the description used, it is enough if the message conveyed to readers was the notion that a party in an understated, but well-understood, format would take place.